# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |

_____

**HON. CYNTHIA M. RUFE**

**THIS DOCUMENT RELATES TO:**

| | |
|---|---|
| **IN RE: CLOBETASOL CASES**<br>*All End-Payer and Indirect Reseller Actions* | **16-CB-27240**<br>**16-CB-27242, 16-CB-27243** |
| **IN RE: DIGOXIN CASES**<br>*All End-Payer and Indirect Reseller Actions* | **16-DG-27240**<br>**16-DG-27242, 16-DG-27243** |
| **IN RE: DIVALPROEX ER CASES**<br>*All End-Payer and Indirect Reseller Actions* | **16-DV-27240**<br>**16-DV-27242, 16-DV-27243** |
| **IN RE: DOXYCYCLINE CASES**<br>*All End-Payer and Indirect Reseller Actions* | **16-DX-27240**<br>**16-DX-27242, 16-DX-27243** |
| **IN RE: ECONAZOLE CASES**<br>*All End-Payer and Indirect Reseller Actions* | **16-EC-27240**<br>**16-EC-27242, 16-EC-27243** |
| **IN RE: PRAVASTATIN CASES**<br>*All End-Payer and Indirect Reseller Actions* | **16-PV-27240**<br>**16-PV-27242, 16-PV-27243** |

_____

## OPINION

**Rufe, J.**                                                            **February 15, 2019**

Defendants in this multidistrict antitrust litigation have moved to dismiss the state law

claims by the End-Payer Plaintiffs ("EPPs") and the Indirect-Reseller Plaintiffs ("IRPs") with

respect to the following generic drugs: (1) clobetasol; (2) digoxin; (3) divalproex ER;

(4) doxycycline; (5) econazole; and (6) pravastatin (collectively, the "Group 1" drugs).[1]  For the reasons set forth below, the motions will be granted in part and denied in part.

## I.   BACKGROUND

The background relevant to this decision is set forth at length in the Court's October 16, 2018 Opinion[2] addressing Defendants' motions to dismiss Plaintiffs' Sherman Act claims with respect to the Group 1 drugs and the Court will not here restate it in detail.  Broadly, Plaintiffs contend that Defendants – pharmaceutical manufacturers – engaged in an unlawful scheme or schemes to fix, maintain and stabilize prices, rig bids, and engage in market and customer allocations of certain generic pharmaceutical products, including the Group 1 drugs.  The EPPs and the IRPs allege that during the time relevant to their claims Defendants sold or distributed the Group 1 drugs "in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States."[3]

Relevant to the issues presently before the Court, the EPPs and the IRPs assert claims for monetary damages under various state antitrust laws, as well as state law consumer protection claims and/or claims for unjust enrichment.  They bring state law claims because they are precluded from asserting federal antitrust claims for damages under the Supreme Court's

---

[1] On October 16, 2018, the Court ruled on Defendants' joint and individual motions to dismiss the Sherman Act claims in the operative consolidated class action complaints brought on behalf of the Direct Purchaser Plaintiffs ("DPPs"), the End-Payer Plaintiffs ("EPPs"), and the Indirect-Reseller Plaintiffs ("IRPs") with respect to the Group 1 drugs.  *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018).  The Court reserved judgment with respect to Defendants' motions to the extent they sought to dismiss the state law claims brought on behalf of the Group 1 EPPs and IRPs.  *Id.* at 434.  This Opinion disposes of those motions.

[2] *Id.* at 411–34.  Relevant formulations of the Group 1 drugs implicated in the Group 1 Plaintiffs' complaints also are identified in the Court's prior Opinion.  *See id.* at 410, nn.4–9.

[3] *See* CB EPP Compl. ¶ 60; DG EPP Compl. ¶ 48; DV EPP Compl. ¶ 45; DX EPP Compl. ¶ 58; EC EPP Compl. ¶ 43; PV EPP Compl. ¶ 52; CB IRP Compl. ¶ 52; DG IRP Compl. ¶ 44; DV IRP Compl. ¶ 32; DX IRP Compl. ¶ 46; EC IRP Compl. ¶ 41; PV IRP Compl. ¶ 49.

decision in *Illinois Brick Co. v. Illinois,*[4] which "determined that direct purchasers are the only parties 'injured' in a manner that permits them to recover damages."[5]

## A. EPPs

The EPPs include employee welfare benefits funds, labor unions, and private insurers, as well as individual plaintiffs, that allege either that they indirectly purchased generic pharmaceuticals manufactured by one or more Defendants or that they provided reimbursements for some or all of the purchase price for the following drugs:

| GROUP 1 CASES<br>End-Payer Plaintiffs: | Clobetasol | Digoxin | Divalproex ER | Doxycycline | Econazole | Pravastatin |
|---|---|---|---|---|---|---|
| American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan | x | x | x | x | x | x |
| Detectives Endowment Association of the City of New York | | x | | x | x | |
| Nina Diamond | | x | | | | |
| Hennepin County | x | | | | | |
| International Union of Operating Engineers Local 30 Benefits Fund | | | | x | | |
| Robby Johnson | | | | | | x |
| Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana and HMO Louisiana, Inc. | x | x | x | x | x | x |
| Ottis McCrary | | | | x | | |
| Philadelphia Federation of Teachers Health and Welfare Fund | | | x | | | |
| The City of Providence Rhode Island | | x | | | x | x |
| Sergeants Benevolent Association of the Police Department of the City of New York Health and Welfare Fund | x | | | | x | x |

---

[4] 431 U.S. 720, 730, 737 (1977) (interpreting federal antitrust law to preclude indirect purchasers from recovering damages to avoid "a serious risk of multiple liability for defendants" and "whole new dimensions of complexity to treble-damages suits [which would] seriously undermine their effectiveness").

[5] *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 366 n.2 (3d Cir. 2005).

| GROUP 1 CASES<br>End-Payer Plaintiffs: | Clobetasol | Digoxin | Divalproex ER | Doxycycline | Econazole | Pravastatin |
|---|---|---|---|---|---|---|
| Self-Insured Schools of California | x | x | x | x | x | x |
| David Sherman | | | | | | x |
| Twin Cities Pipe Trades Welfare Fund | | x | | | | |
| UFCW Local 1500 Welfare Fund | | | | x | | |
| Uniformed Fire Officers Association Family Protection Plan Local 854 | x | | | | | |
| Unite Here Health | x | x | x | x | x | x |
| United Food & Commercial Workers and Employers Arizona Health and Welfare Trust | | | | | x | |
| Valerie Velardi | | | | x | | |
| 1199SEIU National Benefit Fund | x | | x | | | |
| 1199SEIU Greater New York Benefit Fund | x | | x | | | |
| 1199SEIU National Benefit Fund for Home Care Workers | x | | x | | | |
| 1199SEIU Licensed Practical Nurses Welfare Fund | x | | x | | | |

The EPPs' complaints include antitrust, consumer protection and unjust enrichment

claims under the laws of various states and territories as is set forth in the following table:

| End-Payer Plaintiffs | State Antitrust | | | | | | Consumer Protection | | | | | | Unjust Enrichment | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV |
| Alabama[6] | wd | wd | wd | wd | wd | wd | | | | | | | x | x | x | x | x | x |
| Alaska | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Arizona | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Arkansas | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| California | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Colorado | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Connecticut | | | | | | | | | | | | | x | x | x | x | x | x |
| Delaware | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| District of Columbia | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Florida | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Georgia | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Hawaii | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Idaho | | | | | | | | | | | | | x | x | x | x | x | x |

[6] EPPs have now withdrawn all Alabama antitrust claims. *See* EPPs' Response to Defs.' State Antitrust Apps.; *see also* CB EPP Opp. Mem. at 30 n.48; DG EPP Opp. Mem. at 34 n.55; DV EPP Opp. Mem. at 31, n.54. DX EPP Opp. Mem. at 33 n.53; EC EPP Opp. Mem. at 30 n.55; PV EPP Opp. Mem. at 30 n.63. Accordingly, they will be dismissed.

| End-Payer Plaintiffs | State Antitrust | | | | | | Consumer Protection | | | | | | Unjust Enrichment | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV |
| Illinois | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Indiana | | | | | | | | | | | | | | | | | | |
| Iowa | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Kansas | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Kentucky | | | | | | | | | | | | | x | x | x | x | x | x |
| Louisiana | | | | | | | | | | | | | x | x | x | x | x | x |
| Maine | x | x | x | x | | | | | | | | | x | x | x | x | x | x |
| Maryland | | | | | | | | | | | | | x | x | x | x | x | x |
| Massachusetts | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Michigan | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Minnesota | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Mississippi | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Missouri | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Montana | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Nebraska | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Nevada | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| New Hampshire | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| New Jersey[7] | | | | | | | wd | wd | wd | wd | wd | wd | x | x | x | x | x | x |
| New Mexico | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| New York | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| North Carolina | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| North Dakota | x | x | x | x | x | x | x | x | x | | x | x | x | x | x | x | x | x |
| Ohio | | | | | | | | | | | | | | | | | | |
| Oklahoma | | | | | | | | | | | | | x | x | x | x | x | x |
| Oregon | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Pennsylvania | | | | | | | | | | | | | x | x | x | x | x | x |
| Puerto Rico | | | | | | | | | | | | | x | x | x | x | x | x |
| Rhode Island | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| South Carolina | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| South Dakota | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Tennessee | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Texas | | | | | | | | | | | | | x | x | x | x | x | x |
| Utah | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Vermont[8] | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |

[7] EPPs have now withdrawn all New Jersey Consumer Protection Act claims. *See* CB EPP Opp. Mem. at 35; DG EPP Opp. Mem. at 40; DV EPP Opp. Mem. at 36; DX EPP Opp. Mem. at 38; EC EPP Opp. Mem. at 36; PV EPP Opp. Mem. at 36. Accordingly, they will be dismissed. IRPs' New Jersey Consumer Protection Act claims have not been withdrawn.

[8] In their motions to dismiss the digoxin and divalproex ER EPPs' complaints, Defendants argue that "Vermont does not have an antitrust statute of general application . . . ." Defs.' Mem. in Support of Mot. to Dismiss DG EPPs' Compl. at 29 n.18; Defs.' Mem. in Support of Mot. to Dismiss DV EPPs' Compl. at 27 n.11. Digoxin EPPs respond that "Vermont combines its antitrust and consumer protection provisions into a single statute that plainly prohibits *both* antitrust and consumer protection violations." DG EPP Opp. Br. at 32 (*citing* 9 V.S.A. § 2453(a)). They note that the Vermont statute authorizes indirect purchaser antitrust suits, addresses antitrust remedies and expressly prohibits collusion, market allocation and price-fixing. DG EPP Opp. Br. at 32 (*citing* 9 V.S.A. §§ 2453a, 2451a(h), and 2465). The Court will not dismiss EPPs' or IRPs' Vermont antitrust claims.

| End-Payer Plaintiffs | State Antitrust | | | | | | Consumer Protection | | | | | | Unjust Enrichment | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV |
| Virgin Islands | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Virginia | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Washington | | | | | | | | | | | | | x | x | x | x | x | x |
| West Virginia | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Wisconsin | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Wyoming | | | | | | | | | | | | | x | x | x | x | x | x |

Group 1 EPPs reside in or are headquartered in various states, but not in all of the jurisdictions listed above.[9] Their Complaints allege that they indirectly purchased or made payments or reimbursements for the Group 1 drugs in many – but not necessarily all – of the jurisdictions where they bring their state law claims.[10] However, they assert their claims individually and on behalf of a class, seeking damages for "[a]ll persons and entities in the End-Payer Damages Jurisdictions who indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price for" the Group 1 Drugs.[11] The "End-Payer Damages Jurisdictions" are defined as to include all States (except Indiana and Ohio), as well as the District of Columbia,

---

[9] *See* CB EPP Compl. ¶¶ 37-44; DG EPP Compl. ¶¶ 31-39; DV EPP Compl. ¶¶ 32-37; DX EPP Compl. ¶¶ 35-43; EC EPP Compl. ¶¶ 31-38; PV EPP Compl. ¶¶ 37-44; *see also* Defs.' Mem. in Support of Mot. to Dismiss DX EPP Compl. at 20 ("EPPs fail to allege that any of the named plaintiffs is a citizen or resident of Utah . . . .").

[10] *See, e.g.*, Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 20 ("EPPs do not claim to have resided in, nor to have purchased or made reimbursements for clobetasol in, two of the jurisdictions in which they assert claims under consumer protection statutes and for unjust enrichment – Alaska and the U.S. Virgin Islands."); Defs.' Mem. in Support of Mot. to Dismiss DG EPP Compl. at 10 ( "EPPs do not allege that they purchased or provided reimbursement for digoxin in the District of Columbia, the U.S. Virgin Islands, or in 7 states for which they bring claims: Alaska, Kentucky, Montana, North Dakota, South Dakota, Vermont, and West Virginia."); Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 20 ("[E]PPs do not claim to have resided in, or purchased or made reimbursements for Divalproex in two of the jurisdictions in which they assert claims – Vermont and the U.S. Virgin Islands."); Defs.' Mem. in Support of Mot. to Dismiss EC EPP Compl. at 20 ("EPPs here do not allege that they purchased or provided reimbursement for Econazole in seven states or territories under whose laws they assert claims: Alaska, Montana, North Dakota, South Dakota, Vermont, the U.S. Virgin Islands, and West Virginia."); Defs.' Mem. in Support of Mot. to Dismiss EC EPP Compl. at 2 ("None of the EPPs claim to have resided, purchased, or reimbursed purchases of pravastatin in South Dakota or the U.S. Virgin Islands.").

[11] CB EPP Compl. ¶ 231; DG EPP Compl. ¶ 199; DV EPP Compl. ¶ 197; DX EPP Compl. ¶ 231; EC EPP Compl. ¶ 205; PV EPP Compl. ¶ 252; *see also* CB EPP Compl. ¶ 14; DG EPP Compl. ¶ 14; DV EPP Compl. ¶ 14; DX EPP Compl. ¶ 14; EC EPP Compl. ¶ 14; PV EPP Compl. ¶ 19.

Puerto Rico and the U.S. Virgin Islands.[12]

## B.     IRPs

The IRPs are the following independent pharmacies that allege they acquire drugs

indirectly through drug wholesalers rather than directly from drug manufacturers[13]:

| GROUP 1 CASES<br>Indirect Reseller Plaintiffs: | Clobetasol | Digoxin | Divalproex ER | Doxycycline | Econazole | Pravastatin |
|---|---|---|---|---|---|---|
| Chet Johnson Drug, Inc. | x | x | x | x | x | x |
| Deal Drug Pharmacy | x | x | x | x | x | x |
| Falconer Pharmacy, Inc. | x | x | x | x | x | x |
| Halliday's & Koivisto's Pharmacy | x | x | x | x | x | x |
| Russell's Mr. Discount Drugs, Inc. | x | x | x | x | x | x |
| West Val Pharmacy | x | x | x | x | x | x |

Chet Johnson is in Avery, Wisconsin.[14]  Deal Drug is in Nashville, Tennessee.[15] Falconer is in

Falconer, New York.[16]  Russell's is in Lexington, Mississippi.[17]  Halliday's is in Jacksonville,

Florida.[18]  West Val is in Encino, California.[19]

The IRPs' complaints include antitrust, consumer protection and unjust enrichment

claims under the laws of various states and territories as is set forth in the following table[20]:

---

[12] *See* CB EPP Compl. ¶ 231 n.105; DG EPP Compl. ¶ 199 n.109; DV EPP Compl. ¶ 197 n.100; DX EPP Compl. ¶ 231 n.133; EC EPP Compl. ¶ 2045 n.97; PV EPP Compl. ¶ 252 n.101.

[13] *See, e.g.* EC IRP Compl. ¶ 24 ("Independent pharmacies rarely purchase generic drugs directly from the manufacturer, and instead acquire drugs almost exclusively from drug wholesalers such as McKesson Corp., Cardinal Health Inc., or Amerisource Bergen Corp.").

[14] CB IRP Compl. ¶ 41.

[15] CB IRP Compl. ¶ 40.

[16] CB IRP Compl. ¶ 39.

[17] CB IRP Compl. ¶ 38.

[18] CB IRP Compl. ¶ 37.

[19] CB IRP Compl. ¶ 36.

[20] The state law claims brought by the Group 1 EPPs and IRPs largely align.  However, Group 1 IRPs do not assert the following claims raised by the Group 1 EPPs:  a state antitrust claim under Hawaii law; consumer protection claims under the laws of:  the District of Columbia, Hawaii, Massachusetts, Missouri, Montana, Rhode Island, Utah, Vermont, and Virginia; and unjust enrichment claims under the laws of Connecticut, Hawaii, Kentucky, and Oklahoma.

| Indirect Reseller Plaintiffs | State Antitrust | | | | | | Consumer Protection | | | | | | Unjust Enrichment | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV |
| Alabama | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Alaska | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Arizona | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Arkansas | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| California | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Colorado | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Connecticut | | | | | | | | | | | | | | | | | | |
| Delaware | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| District of Columbia | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Florida | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Georgia | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Hawaii | | | | | | | | | | | | | | | | | | |
| Idaho | | | | | | | | | | | | | x | x | x | x | x | x |
| Illinois | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Indiana | | | | | | | | | | | | | | | | | | |
| Iowa | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Kansas | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Kentucky | | | | | | | | | | | | | | | | | | |
| Louisiana | | | | | | | | | | | | | x | x | x | x | x | x |
| Maine | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Maryland | | | | | | | | | | | | | x | x | x | x | x | x |
| Massachusetts | | | | | | | | | | | | | x | x | x | x | x | x |
| Michigan[21] | x | x | x | x | x | x | wd | x | wd | wd | wd | wd | x | x | x | x | x | x |
| Minnesota | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Mississippi | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Missouri | | | | | | | | | | | | | x | x | x | x | x | x |
| Montana | | | | | | | | | | | | | x | x | x | x | x | x |
| Nebraska | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Nevada[22] | x | x | x | x | x | x | wd | x | wd | wd | wd | wd | x | x | x | x | x | x |
| New Hampshire | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| New Jersey | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| New Mexico | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| New York | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| North | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |

---

[21] In their response to Defendants' Motions to Dismiss, IRPs voluntarily dismiss their clobetasol, divalproex ER, doxycycline, econazole and pravastatin claims under the Michigan consumer protection statute. Accordingly, the Court will dismiss these claims. *See* CB IRP Opp. Mem. at 21; DV IRP Opp. Mem. at 25; DX IRP Opp. Mem. at 21; EC IRP Opp. Mem. at 24; PV IRP Opp. Mem. at 24. Digoxin IRPs' Michigan consumer protection claim remains.

[22] In their response to Defendants' Motions to Dismiss, IRPs voluntarily dismiss their clobetasol, divalproex ER, and pravastatin claims under the Nevada consumer protection statute. Accordingly, the Court will dismiss these claims. *See* CB IRP Opp. Mem. at 21; DV IRP Opp. Mem. at 25; DX IRP Opp. Mem. at 21; EC IRP Opp. Mem. at 24; PV IRP Opp. Mem. at 24. Digoxin IRPs' Nevada consumer protection claim remains.

| Indirect Reseller Plaintiffs | State Antitrust | | | | | | Consumer Protection | | | | | | Unjust Enrichment | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV | CB | DG | DV | DX | EC | PV |
| Carolina | | | | | | | | | | | | | | | | | | |
| North Dakota | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Ohio | | | | | | | | | | | | | | | | | | |
| Oklahoma | | | | | | | | | | | | | | | | | | |
| Oregon | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| Pennsylvania | | | | | | | | | | | | | x | x | x | x | x | x |
| Puerto Rico | | | | | | | | | | | | | x | x | x | x | x | x |
| Rhode Island | x | x | x | x | x | x | | | | | | | x | x | x | x | x | x |
| South Carolina | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| South Dakota | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Tennessee | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Texas | | | | | | | | | | | | | x | x | x | x | x | x |
| Utah | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Vermont | x | x | x | x | x | | | | | | | | x | x | x | x | x | x |
| Virgin Islands | | | | | | | x | x | x | x | x | x | x | x | x | x | x | x |
| Virginia | | | | | | | | | | | | | x | x | x | x | x | x |
| Washington | | | | | | | | | | | | | x | x | x | x | x | x |
| West Virginia | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Wisconsin | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x | x |
| Wyoming | | | | | | | | | | | | | x | x | x | x | x | x |

Although IRPs are not located in each of the jurisdictions listed in the table above, they allege that "[t]here are approximately 22,000 privately-owned independent pharmacies in the United States" and that "[o]ver a billion prescriptions for U.S. patients are dispensed through independent pharmacies each year."[23] Thus, IRPs assert their state law claims individually and on behalf of a damages class of all privately-held pharmacies in the "IRP Damages Jurisdictions" that indirectly purchased the relevant Group 1 drug during the class period alleged in each Group 1 complaint.[24] The IRP Damages Jurisdictions are:

Alabama, Alaska, Arizona, Arkansas, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota,

---

[23] CB IRP Compl. ¶ 29.

[24] CB IRP Compl. ¶ 222; DG IRP Compl. ¶ 170; DV IRP Compl. ¶ 195; DX IRP Compl. ¶ 249; EC IRP Compl. ¶ 160; PV IRP Compl. ¶ 185.

Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming as well as the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.[25]

## C.    DEFENDANTS

Moving Defendants, alleged manufacturers of the Group 1 drugs,[26] are identified at length in the Court's October 16, 2018 Opinion and will not be thoroughly inventoried here.[27] Group 1 Defendants are alleged to be incorporated in the following states:  Colorado (Sandoz), Delaware (Actavis, Glenmark, Impax, Heritage, Hi-Tech Pharmacal, Lannett, Lupin, Mayne, Morton Grove, Perrigo, Taro, Teligent, Teva, West-Ward, Wockhardt), Florida (Apotex), Louisiana (Akorn), Michigan (Sun), New Jersey (Dr. Reddy's, Zydus), New York (Fougera, Par), Pennsylvania (Mylan, Inc.), and West Virginia (Mylan Pharmaceuticals).  They are alleged to have principal places of business in:  California (Impax), Florida (Apotex), Illinois (Akorn, Morton Grove), Maryland (Lupin), New Jersey (Actavis, Dr. Reddy's, Glenmark, Heritage, Sandoz, Sun, Teligent, West-Ward, Wockhardt, Zydus), New York (Fougera, Hi-Tech Pharmacal, Par, Perrigo, Taro), North Carolina (Mayne), Pennsylvania (Lannett, Teva), and West Virginia (Mylan Defendants).  Group 1 EPPs and IRPs allege that during the class period Group 1 Defendants sold the Group 1 drugs to purchasers throughout the United States.[28]

In their complaints, Group 1 Plaintiffs allege that: "Defendants' and their co-conspirators' conduct, including the marketing and sale of [the relevant Group 1 drug], took

---

[25] CB IRP Compl. ¶ 222 n.88; DG IRP Compl. ¶ 170 n.91; DV IRP Compl. ¶ 195 n.68; DX IRP Compl. ¶ 249 n.97; EC IRP Compl. ¶ 160 n.88; PV IRP Compl. ¶ 185 n.88.

[26] No Defendant named in a Group 1 case is alleged to have manufactured all the pharmaceutical products included in the Group 1 cases.  Several of the Defendants named in the Group 1 cases are alleged to have manufactured only one relevant pharmaceutical product, while others are alleged to have manufactured two or more of the pharmaceutical products included in this MDL.

[27] *In re Generic*, 338 F. Supp. 3d at 417–20.

[28] *See, e.g.*, CB EPP Compl. ¶¶ 42-50; PV IRP Compl. at ¶¶ 42-47.

place within, has had, and was intended to have, a direct, substantial, and reasonably foreseeable anticompetitive effect upon interstate commerce within the United States"[29]; and/or that:

> Defendants' anticompetitive conduct occurred in part in trade and commerce within the states and territories set forth herein, and also had substantial intrastate effects in that, *inter alia*, drug wholesalers within each state and territory were foreclosed from offering less expensive generic [the relevant Group 1 drug] to Plaintiffs inside each respective state and territory. The foreclosure of these less expensive generic products directly impacted and disrupted commerce for Plaintiffs within each state and territory and forced Plaintiffs to pay supracompetitive prices.[30]

Group 1 EPPs and IRPs allege that "Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation the state consumer protection and unfair competition statutes" of various states.[31] They also allege that Group 1 Defendants benefitted from their alleged conduct and that Defendants have been "enriched by revenue resulting from overcharges for" the Group 1 drugs while "Plaintiffs have been impoverished by the overcharges they paid for [the Group 1 drugs] imposed through Defendants' unlawful conduct."[32]

## II.   DISCUSSION

Group 1 Defendants move to dismiss the state law claims brought by the Group 1 EPPs

---

[29] CB EPP Compl. ¶ 61; DG EPP Compl. ¶ 49; DV EPP Compl. ¶ 46; DX EPP Compl. ¶ 59; EC EPP Compl. ¶ 44; PV EPP Compl. ¶ 53; DV IRP Compl. ¶ 34; DX IRP Compl. ¶ 48.

[30] CB EPP Compl. ¶ 62; DG EPP Compl. ¶ 50; DV EPP Compl. ¶ 47; DX EPP Compl. ¶ 60; EC EPP Compl. ¶ 45, PV EPP Compl. ¶ 54; CB IRP Compl. ¶ 54; DG IRP Compl. ¶ 46; EC IRP Compl. ¶ 43; PV IRP Compl. ¶ 51. The Court notes that the divalproex ER IRP and doxycycline IRP complaints do not include this intrastate commerce allegation.

[31] CB EPP Compl. ¶ 287; DG EPP Compl. ¶ 255; DV EPP Compl. ¶ 253; DX EPP Compl. ¶ 287; EC EPP Compl. ¶ 260, PV EPP Compl. ¶ 307; CB IRP Compl. ¶ 279; DG IRP Compl. ¶ 227; DV IRP Compl. ¶ 252; DX IRP Compl. ¶ 316; EC IRP Compl. ¶ 217; PV IRP Compl. ¶ 242.

[32] CB EPP Compl. ¶¶ 321-24; DG EPP Compl. ¶¶ 289-92; DV EPP Compl. ¶¶ 287-90; DX EPP Compl. ¶¶ 321-24; EC EPP Compl. ¶¶ 294-97, PV EPP Compl. ¶¶ 341-44; CB IRP Compl. ¶¶ 304-07; DG IRP Compl. ¶¶ 252-55; DV IRP Compl. ¶¶ 277-80; DX IRP Compl. ¶¶ 441-44; EC IRP Compl. ¶¶ 242-45; PV IRP Compl.¶¶ 267-70.

and IRPs. They argue that Group 1 EPPs' and IRPs' claims under the laws of those states or territories in which they do not reside or allege to have reimbursed purchases for Group 1 drugs should be dismissed for lack of Article III standing. Defendants also argue that Group 1 EPPs' and IRPs' state antitrust, consumer protection, and unjust enrichment claims suffer from a variety of state specific pleading failures. Finally, they assert that many of the Group 1 EPPs' and IRPs' state law claims are barred by applicable statutes of limitations. The Court considers Group 1 Defendants' arguments in turn.

### A.    ARTICLE III STANDING

To the extent that Group 1 Defendants seek to dismiss certain of the EPP and IRP state law claims for failure to allege facts sufficient to establish Article III standing, Rule 12(b)(1) of the Federal Rules of Civil Procedure applies to their motions "because standing is a jurisdictional matter."[33] Article III of the Constitution requires Plaintiffs to have standing in order to assert their claims.[34] To sufficiently allege constitutional standing, Plaintiffs must allege three elements:  (1) injury-in-fact:  an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent" (not merely "conjectural" or "hypothetical");
(2) causation:  an injury which is fairly traceable to the challenged conduct; and
(3) redressability:  that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"[35] Where a complaint fails to satisfy these requirements, the federal court does not have subject matter jurisdiction and the claims must be dismissed.[36]

---

[33] *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

[34] *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[35] *Id.* at 561.

[36] *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006).

Because Group 1 EPPs and IRPs have invoked this Court's federal jurisdiction over their state law claims, they bear the burden of establishing the elements required for Article III standing. [37] When considering a 12(b)(1) motion, the Court "review[s] only whether the allegations on the face of the complaint, taken as true, allege sufficient facts to invoke the jurisdiction of the district court."[38]

Group 1 Defendants contend Group 1 EPPs and IRPs lack Article III standing to pursue claims under the laws of the jurisdictions where the named Plaintiffs have not specifically alleged purchases or reimbursements.[39] "[W]hen the issue presented in a motion to dismiss concerns solely whether the *named* plaintiffs have standing to assert class action claims, the named plaintiffs' standing is a threshold issue, and there is no reason to defer the named plaintiffs' standing determination until class certification."[40] Here, Group 1 Defendants do not dispute that Group 1 EPPs and IRPs have standing to pursue claims under the laws of those jurisdictions where they paid for the generic drugs at issue. No named Plaintiff seeks relief for *itself* under the laws of a jurisdiction where it would not have standing. Rather, the Group 1 EPP

---

[37] *Lujan*, 504 U.S. at 561.

[38] *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994).

[39] *See, e.g.*, CB Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 20 (arguing that EPPs lack standing to assert their claims under the laws of Alaska and the U.S. Virgin Islands because they "do not claim to have resided in, nor to have purchased or made reimbursements for Clobetasol in" those jurisdictions); CB Defs' Mem. in Support of Defs.' Mot. to Dismiss IRP Compl. at 11 (arguing IRPs only have standing to bring claims under the laws of California, Florida, Mississippi, New York, Tennessee, and Wisconsin); DV Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 11 (arguing EPPs do not have standing to bring claims in Vermont and the U.S. Virgin Islands because they "do not claim to have resided in, or purchased or made reimbursements for Divalproex in" those jurisdictions); DV Mem. in Support of Defs.' Mot. to Dismiss IRP Compl. at 14 (arguing that "all of Plaintiffs' state law claims except those that arise under California, Florida, Mississippi, New York, Tennessee, and Wisconsin law must be dismissed" because "Plaintiffs do not claim to have purchased Divalproex in any state or territory other than the six states in which they are residents").

[40] *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 882, n.11 (E.D. Pa. 2012) (emphasis added); *see also In re Flonase Antitrust Litigation*, 692 F. Supp. 2d 524, 534 (E.D. Pa. 2010) (finding no reason to defer the standing determination until after class certification because "[n]amed plaintiffs must have case or controversy standing").

and IRP complaints include "a mixture of state law claims *only* because [Plaintiffs] bring [each action] as a proposed class action."[41]

As one court has explained, "[t]he interplay between Article III standing and class standing presents a surprisingly difficult question."[42] "Courts have taken different views about how to evaluate Article III and class standing at the motion to dismiss stage where putative class representatives assert claims arising under the laws of states where they neither reside nor allege to have suffered injury."[43] The Third Circuit has not definitively answered this question. In *Neale v. Volvo Cars of North America, LLC*,[44] the Court of Appeals did caution that "[r]equiring individual standing of all class members would eviscerate the representative nature of the class action." It explained that it was "not persuaded" that it should "adopt the approach taken by some of [its] sister courts that require all class members to possess standing."[45] It held that "so long as a named class representative has standing, a class action presents a valid 'case or controversy' under Article III."[46]

In this District, the decision in *In re: Niaspan Antitrust Litigation* concluded that *Neale* did not "affect the requirement that plaintiff must establish standing individually with respect to

---

[41] *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 806 (N.D. Ohio 2011).

[42] *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, 2015 WL 5458570, at *13 (D. Mass. Sept. 16, 2015).

[43] *Id.* at *14.

[44] 794 F.3d 353, 367 (3d Cir. 2015).

[45] *Id.* at 365.

[46] *Id.* at 369; s*ee also Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018) (quoting *Neale*, 794 F.3d at 368); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687, 2017 WL 3131977, at *19 (D.N.J. July 20, 2017) ("reject[ing] Defendants' argument that the named IPP Plaintiffs lack standing to bring state law claims under the laws of a state in which they do not reside").

each claim asserted,"[47] citing "prior decisions in this district and others [that] have ruled that named plaintiffs in an antitrust class action lack standing to bring claims on behalf of putative classes under the laws of states where no named plaintiff is located and where no named plaintiff purchased the product at issue."[48] Before *Neale*, a prior decision in the same litigation had explained that "deferring this standing determination would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union."[49]

But other courts, including some in this Circuit, have taken a different view.  In the case *In re Liquid Aluminum Sulfate Antitrust Litigation*, the District of New Jersey rejected the defendants' argument that the named plaintiffs "lack[ed] standing to bring state law claims under the laws of a state in which they do not reside."[50]  The Court explained that "class certification . . . is 'logically antecedent' to the issue of standing.  This is because class discovery will unveil the various members of the currently unknown class."[51]  Similarly, in the *In re Chocolate Confectionary Antitrust Litigation*, the Middle District of Pennsylvania found that because "the plaintiffs' attempt to represent the proposed class" gave rise to the question of whether they had

---

[47] No. 13-md-2460, 2015 WL 8150588, at *3 (E.D. Pa. Dec. 8, 2015).

[48] *Id.* (citation omitted); *see also In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 694 (E.D. Pa. 2014) ("The fact that this is a class action should not change the analysis for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (internal quotation marks and citation omitted).

[49] *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 n.20 (E.D. Pa. 2014) (internal quotation and citations omitted).

[50] No. 16-md-2687, 2017 WL 3131977, at *19 (D.N.J. July 20, 2017).

[51] *Id.*

standing to represent individuals from other states, the question of class certification was

"'logically antecedent' to the standing concerns" and the Court declined to rule on the issue

"until class certification proceedings."[52]

Group 1 "Defendants are not challenging [EPPs' or IRPs'] standing to bring their own

claims; they are challenging their standing to bring claims on behalf of the class."[53]  It matters

that this issue arises in the context of a class action.  In a recent decision in a putative class action

asserting claims under the Americans with Disabilities Act, where the named plaintiffs sought to

require the defendant "to correct alleged ADA violations at more than the two restaurant

locations where they claim[ed] to have actually experienced injury," the Third Circuit rejected

the defendants' "invitation to insert Rule 23 issues into [its] inquiry on standing," and explained

that "the standing inquiry must be limited to a consideration of the class representatives

themselves, after which [the court] may 'employ Rule 23 to ensure that classes are properly

certified.'"[54]

Similarly, the Second Circuit has explained that:

Since class action plaintiffs are not required to have individual standing to press
any of the claims belonging to their unnamed class members, it makes little sense
to dismiss the state law claims of unnamed class members for want of standing
when there was no requirement that the named plaintiffs have individual standing
to bring those claims in the first place.[55]

---

[52] 602 F. Supp. 2d 538, 579–80 (M.D. Pa. 2009).

[53] *In re Loestrin 24 FE Antitrust Litig.*, 261 F. Supp. 3d 307, 359 (D.R.I. 2017) (holding that where the scheme and injury alleged by the plaintiffs was "the same across the country" and the plaintiffs had "a collective interest in litigating their claims together to attempt to recover," the "question would be appropriately, and more efficiently, addressed at the class certification stage").

[54] *Mielo*, 897 F.3d at 480 (*quoting Neale*, 794 F.3d at 368).

[55] *Langan v. Johnson & Johnson Consumer Cos., Inc.* 897 F.3d 88, 95 (2d Cir. 2018); *cf. In re Thalomid & Revlimid Antitrust Litig.*, No. 14–6997, 2015 WL 9589217, at *19 (D.N.J. Oct. 29, 2015) (holding the defendants' "attack on plaintiffs' standing to pursue state law claims on behalf of absent class members is not an Article III jurisdictional issue").

It held that "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing."[56] And yet another court has concluded that:

> there is no constitutional imperative that the named plaintiff himself have a valid claim under every legal theory he proposes to assert on behalf of a class. . . . If such a requirement exists, it is the consequence of the class-certification prerequisites imposed by Rule 23 of the Federal Rules of Civil Procedure, not of Article III.[57]

Even more recently, the First Circuit explained that:

> the question of standing is not: Are there differences between the claims of the class members and those of the class representative? Rather, the pertinent question is: Are the differences that do exist the type that leave the class representative with an insufficient personal stake in the adjudication of the class members' claims?[58]

The First Circuit explained the plaintiffs had successfully stated a basis for Article III standing where "success on the claim under one state's law will more or less dictate success under another state's law" and the "laws are materially the same," such that "the fact that judgments for some class members will nevertheless enter under the laws of states other than the states under which any of the class representatives' judgments will enter . . . has no relevant bearing on the personal stake of the named plaintiffs in litigating the case[.]"[59] The court observed that "[i]n a properly certified class action, the named plaintiffs regularly litigate . . . claims of other class members based on transactions in which the named plaintiffs played no part."[60]

---

[56] *Langan*, 897 F.3d at 96.

[57] *Muir v. Nature's Bounty (DE), Inc.*, No. 15-9853, 2018 WL 3647115, at *7 (N.D. Ill. Aug. 1, 2018) (emphasis omitted).

[58] *In re Asacol Antitrust Litig.*, 907 F.3d 42, 49 (1st Cir. 2018).

[59] *Id.*

[60] *Id.* at 50 (internal quotation marks and citation omitted).

Group 1 EPPs' and IRPs' allegations are sufficient to demonstrate a substantial and shared interest in proving that Group 1 Defendants' alleged unlawful conduct resulted in overpayments for the Group 1 drugs, injuries redressable by an award of damages under the state antitrust, consumer protection and unjust enrichment laws cited in the Group 1 EPP and IRP complaints.[61]  Because the state law claims of the named Group 1 EPPs and IRPs largely parallel those of the putative class members, it is both proper and more efficient to consider whether they may pursue their claims on behalf of the unnamed class members in the context of the class certification analysis required under Rule 23 of the Federal Rules of Civil Procedure (*e.g.*, commonality and typicality under 23(a), and predominance under 23(b)).  Therefore, Group 1 EPPs' and IRPs' claims on behalf of absent class members will not be dismissed for lack of Article III standing.

### B.     FAILURE TO STATE A CLAIM

To the extent that Group 1 Defendants seek to dismiss certain of the Group 1 EPP and IRP state law claims for failure state a claim pursuant to certain state laws, Rule 12(b)(6) of the Federal Rules of Civil Procedure applies to their motions.  Rule 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[62]  To withstand dismissal, the complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."[63]  On a motion

---

[61] *Cf. In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 585 (E.D. Pa. 2018) (declining to block class standing on a motion to dismiss where the named indirect purchaser plaintiffs did not specifically allege they had made payments or reimbursements in every state where they asserted state law claims, explaining that "since Plaintiffs cover beneficiaries in numerous other states, they face an imminent threat of injury in fact in those states as well").

[62] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[63] *Id.* at 562 (internal quotation marks and citations omitted).

to dismiss, the Court "consider[s] plausibility, not probability."[64]  In other words, Plaintiffs are not required "to plead facts that, if true, definitely rule out all possible innocent explanations."[65] The Court must ordinarily consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[66]  In addition, "courts may consider documents *integral to or explicitly relied* upon in the complaint . . . or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[67]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[68]

### 1. STATE ANTITRUST CLAIMS

Group 1 Defendants argue that many of Group 1 EPPs' and IRPs' state antitrust claims should be dismissed for failure to state a claim.  To the extent that Group 1 Defendants contend the state antitrust claims should be dismissed because the EPPs and IRPs have not stated a claim under the overlapping federal antitrust laws, the motions fail.  The Court has already determined that Group 1 Plaintiffs' allegations (with the exception of their allegations against Telligent)[69]

---

[64] *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 260 (3d Cir. 2017); *see also Twombly*, 550 U.S. at 570 (holding that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face").

[65] *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 753 (E.D. Pa. 2014).

[66] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994).

[67] *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (emphasis in original) (brackets, internal quotation marks and citations omitted).

[68] *Twombly*, 550 U.S. at 555, 564.

[69] The Court's October 16, 2018 decision dismissed the Sherman Act claims of the econazole DPPs, EPPs, and IRPs against defendant Teligent, Inc. and permitted them to seek leave to amend their claims in accordance with the provisions of Pretrial Order No. 51.  Econazole EPPs and IRPs filed consolidated amended class action complaints on December 20 and 21, 2018, respectively.  The Court does not here consider the sufficiency of the allegations in the amended econazole complaints, having reserved judgment with respect to the motions to dismiss EPPs' and IRPs' state law claims for this later decision.

are sufficient to permit their federal antitrust claims to withstand dismissal.[70]  Also, the Group 1

EPPs and IRPs have alleged a basis for antitrust standing, the Court having held that they have

sufficiently pled "that they have suffered harm that is an essential component of Defendants'

anticompetitive scheme, as opposed to an ancillary byproduct of it."[71]

The Court considers Defendants' state specific arguments regarding the sufficiency of

Group 1 EPPs and IRPs state law antitrust claims below.  Some of the arguments apply to all or

most of such claims, others to subsets, and still others to the laws of individual states.

### a.    Class Action Bar:  Illinois Antitrust Act

Group 1 Defendants argue that EPPs and IRPs cannot bring class claims under the Illinois

Antitrust Act.  The statute provides that "no person shall be authorized to maintain a class action

in any court of this State for indirect purchasers asserting claims under this Act, with the sole

exception of this State's Attorney General."[72] "District courts are divided on whether the Illinois

Antitrust Act precludes indirect purchasers from filing class actions"[73] and the Third Circuit has

---

[70] *See In re Generic Pharm. Pricing*, 338 F. Supp. 3d at 454.  Defendants concede that federal antitrust law is "either determinative or highly persuasive with respect to [its] state law analogues."  Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 15; Defs.' Mem. in Support of Mot. to Dismiss DX EPP Compl. at 11 (same); *see also* Defs.' Mem. in Support of Mot. to Dismiss. DV EPP Compl. at 10 ("Courts . . . regularly dismiss state law antitrust claims when dismissing Sherman Act claims based on the same allegations."); Defs.' Mem. in Support of Mot. to Dismiss EC IRP Compl. at 4 (same); Defs.' Mem. in Support of Mot. to Dismiss DG EPP Compl. at 8 ("State claims brought in federal court must meet federal pleading standards."); Defs.' Mem in Support of Mot. to Dismiss CB IRP Compl. at 21 ("the antitrust laws of each of the jurisdictions at issue in Count II have been construed in harmony with federal antitrust laws"); Defs.' Mem. in Support of Mot. to Dismiss PV IRP Compl. at 5, (*citing Rick-Mik Enters., Inc. v. Equilon Enters., LLC*, 532 F.3d 963, 976 n.5 (9th Cir. 2008) ("[S]tate law antitrust claims are derivative of the federal law claims. Because the federal claims fail, the state law claims fail.")).

[71] *In re Generic Pharm. Pricing*, 338 F. Supp. 3d at 457 (internal quotation and citation omitted).

[72] 740 Ill. Comp. Stat. 10/7(2).

[73] *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 417 (D.N.J. 2018).  *Compare In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 728 (S.D.N.Y. 2017) (holding that the statute is a "state procedural rule [that] does not control in federal court, where Rule 23 sets the only relevant requirements to file a class action") *with In re Lipitor*, 336 F. Supp. 3d at 418 (holding that "the language of the [Illinois] Act presents a substantive conflict with Rule 23").

not had to resolve this question. Federal courts sitting in diversity jurisdiction must utilize federal procedural law and state substantive law.[74] If the Illinois statute is substantive in nature, it applies, and must be followed here.[75] However, "there is no bright line between procedural and substantive law, and thus, the distinction is difficult to determine."[76]

Group 1 Defendants argue that the Illinois "restriction on indirect purchaser class actions is substantive, represents a policy judgment as to the feasibility of managing duplicative recovery, which the [Illinois] legislature has entrusted to the [State] Attorney General but not to individual indirect purchasers, and therefore must be applied in federal court."[77] Group 1 EPPs respond that "the class action bar is not part of Illinois' framework of substantive rights and remedies," because Rule 23 of the Federal Rules of Civil Procedure, the rule governing class actions is, "merely a procedural mechanism that affects how those claims proceed in federal court."[78] Likewise, Group 1 IRPs assert that the Illinois Antitrust Act class action bar is a "procedural limitation" that does not apply because they "filed in federal court and bring a class action under Rule 23 . . . ."[79]

The prevailing view of the District Courts that have considered this issue within this

---

[74] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[75] *See Shady Grove Orthopedic Ass'n v. Allstate Ins. Co.*, 559 U.S. 393, 419 (2010) ("the balance Congress has struck turns, in part, on the nature of the state law that is being displaced by a federal rule") (Stevens, J. concurring); *see also In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670, 675 (E.D. Pa. 2010) (explaining that the five justices in the concurrence and the dissent in *Shady Grove* "concluded that the validity of Federal Rules of Civil Procedure turns, in part, on the rights afforded by the state rule that the Federal Rule displaces").

[76] *In re Lipitor*, 336 F. Supp. 3d at 414.

[77] *See* PV Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 18 (internal quotations and citations omitted).

[78] *See* PV EPP Opp. Br. at 26-27 (internal quotations and citations omitted).

[79] *See* PV IRP Opp. Br. at 16.

Circuit is that the Illinois Antitrust Act prohibits indirect purchaser class actions.[80]  Under the

Supreme Court's decision in *Shady Grove Orthopedic Association v. Allstate Insurance Co.*,

state procedural rules control in federal court when they are "part of a State's framework of

substantive rights or remedies."[81]  The Court is persuaded that "the indirect purchaser restrictions

of the [Illinois Antitrust Act] are 'intertwined' with the underlying substantive right," and, as a

result "application of Rule 23 would 'abridge, enlarge or modify' Illinois' substantive rights."[82]

Accordingly, the Court will dismiss with prejudice Group 1 EPPs' and IRPs' claims under the

Illinois Antitrust Act.

### b.  Pre-Suit Notice Requirements

The antitrust laws of Arizona, Hawaii, Nevada, and Utah have pre-filing notice

requirements obligating any antitrust plaintiff to serve certain state officials with pre-suit notices

in order to pursue their claims.[83] Group 1 Defendants argue that the clobetasol, digoxin,

divalproex, econazole and pravastatin EPPs' Arizona, Hawaii, Nevada, and Utah antitrust claims

and the clobetasol, divalproex, econazole, and pravastatin IRPs' Arizona, Nevada, and Utah

---

[80] *See In re Wellbutrin*, 756 F. Supp. 2d at 677 ("The Illinois restrictions on indirect purchaser actions are intertwined with Illinois substantive rights and remedies because (1) the restrictions apply only to the [Illinois Antitrust Act], (2) they are incorporated in the same statutory provision as the underlying right, not a separate procedural rule, and (3) the restrictions appear to reflect a policy judgment about managing the danger of duplicative recoveries."); *In re Effexor Antitrust Litig.*, No. 11-5661, 2018 WL 6003893, at *16 (D.N.J. Nov. 15, 2018) ("The language of the Act presents a substantive conflict with Rule 23; as such, since the Illinois Antitrust Act controls the Court finds that EPPs lack standing to assert claims under the Act and, therefore, dismisses this claim with prejudice."); *In re Lipitor*, 336 F. Supp. 3d at 418 (same).

[81] 559 U.S. at 419 (Stevens, J., concurring); *see also In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016).

[82] *In re Wellbutrin*, 756 F. Supp. 2d at 677; *but see Contant v. Bank of Am. Corp.*, No. 17-3139, 2018 WL 5292126, at *12 (S.D.N.Y. Oct. 25, 2018) (holding that the Illinois Antitrust Act, "which applies exclusively to antitrust class actions" must be procedural if the state statute considered in *Shady Grove* was found to not "abridge, enlarge or modify any substantive right" even though it "foreclosed a wide range of potential class actions").

[83] *See* Ariz. Rev. Stat. § 44-1415(A); Haw. Rev. Stat § 480-13.3; Nev. Rev. Stat. Ann. § 598A.210(3); Utah Code Ann. § 76-10-3109(9).

antitrust claims must be dismissed because the relevant plaintiffs have not sufficiently alleged that they met each state's pre-suit notice requirement. The relevant EPPs respond that they "did send notices as required" and submit a declaration in support of their efforts to provide the notice required under each of the relevant state laws.[84] The relevant IRPs assert that defendants "had notice of the incoming IRP complaints long before they were served" and "are in no way prejudiced by the IRP's omission of an allegation that notice was provided."[85] Group 1 Plaintiffs also contend that their "adherence to the notice requirements is not mandatory because the states' procedural rules are superseded by federal procedural rules."[86] Group 1 Defendants counter that compliance with the notice requirements should not be excused under *Shady Grove*.[87]

With respect to the *Shady* Grove issue, there is no consensus regarding whether the cited notice requirements are "substantive" or "procedural." To the extent that the relevant statutory provisions have been considered, some have concluded that the provisions are mandatory and that declining to follow them "'in federal court would encourage forum shopping and the

---

[84] *See* CB EPP Opp. Mem. at 28 (*citing* CB EPP Opp. Mem. App'x H). In deciding whether EPPs have sufficiently alleged compliance with the relevant notice requirements, the Court cannot consider EPPs' declaration, as it is not part of their complaints, an exhibit attached thereto, or a matter of public record. *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) ("courts may consider documents *integral to or explicitly relied* upon in the complaint . . . or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document") (brackets, internal quotation marks, and citations omitted).

[85] *See* PV IRP Opp. Mem. at 16. The relevant question is not whether Defendants have been prejudiced by any failure to follow the statutorily required notice procedures. As Defendants argue, the purpose of the statutory rules is not to give notice to Defendants, but to inform the relevant state attorney general so they may decide whether to intervene or otherwise proceed with the claim. *See* DV Defs.' IRP Reply Br. at 7-8.

[86] CB EPP Opp. Mem. at 28-29; *see also* PV IRP Opp. Mem. at 16 ("Pre-suit or post-suit notice is not an element required to state a claim but instead a procedural rule superseded by the Federal Rules of Civil Procedure.") (citation omitted).

[87] *See* DV Defs.' IRP Reply Br. at 6-7 ("several post-*Shady Grove* courts in this district and elsewhere have dismissed federal class actions for failure to comply with demand letter requirements, noting that the requirement is not merely a procedural nicety, but, rather, a prerequisite to suit") (citation and internal quotations omitted).

inequitable administration of laws.'"[88]  Others have found they are not sufficiently a part of the relevant States' framework of substantive rights or remedies to be controlling.[89]  Regardless of whether the relevant notice provisions are substantive or procedural, they do not alter the substantive elements of Plaintiffs' claims and are not a pleading requirement for the Complaints. Therefore, this argument is not a basis for dismissal of EPPs or IRPs state antitrust claims.

### c.    Intrastate Conduct

Group 1 Defendants challenge the sufficiency of certain Group 1 EPPs' and IRPs' claims under the antitrust laws of the District of Columbia, Hawaii, Illinois[90], Kansas, Maine, Minnesota, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Tennessee, West Virginia and Wisconsin, arguing the laws require Plaintiffs to allege a nexus between Defendants' conduct and intrastate commerce.[91]  Group 1 Defendants

---

[88] *In re Effexor Antitrust Litig.*, 2018 WL 6003893, at *13 (*quoting In re Asacol Antitrust Litig.*, No. 15-12730, 2016 WL 4083333, at *15 (D. Mass. July 20, 2016)); *see also In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 232 (M.D. Pa. 2010) (finding failure to comply with Hawaii notice requirement "warrants dismissal").

[89] *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-2819, 2018 WL 5928143, at *6 (E.D.N.Y. Nov. 13, 2018) ("Hawaii's law regulates only when private plaintiffs can litigate the case. It does not alter the substantive elements of plaintiffs' claims."); *In re Propranolol*, 249 F. Supp. 3d at 728 n. 24 (dismissal not required for failure to comply with Hawaii's procedural notice rule); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 817 (N.D. Ill. 2017) (declining to dismiss Arizona antitrust claim notwithstanding late notice to attorney general); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 254 (D. Conn. 2015) (declining to dismiss based on the plaintiffs' failure to plead compliance with the notice requirements of the Hawaii antitrust statute); *In re Aftermarket Filters Antitrust Litig.*, No. 08-4883, 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009) (finding the Hawaii antitrust "statute does not provide for dismissal of the action for failure to comply [with the pre-suit notice requirement], and that dismissal is inconsistent with the remedial purposes of the statute").

[90] Because the Court has already found that Plaintiffs cannot state a claim under the Illinois Antitrust Act, it need not consider Group 1 Defendants' intrastate conduct arguments regarding Group 1 Plaintiffs' Illinois antitrust claims.

[91] See EPPs' Response to Defendants' Antitrust Intrastate Effects Appendices.  *See* also CB Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 22; DG Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 21; DV Defs' Mem. in Support of Mot. to Dismiss EPP Compl. at 18; DX Defs' Mem. in Support of Mot. to Dismiss EPP Compl. at 21; EC Defs' Mem. in Support of Mot. to Dismiss EPP Compl. at 14; PV Defs' Mem. in Support of Mot. to Dismiss EPP Compl. at 20; CB Defs.' Mem. in Support of Mot. to Dismiss IRP Compl. at 27; DG Defs.' Mem. in Support of Mot. to Dismiss IRP Compl. at 17-18; DV Defs' Mem. in Support of Mot. to Dismiss IRP Compl. at 18-19; DX Defs' Mem. in Support of Mot. to Dismiss IRP Compl. at 20; EC Defs' Mem. in Support of Mot. to Dismiss EPP Compl. at 10-11; PV Defs' Mem. in Support of Mot. to Dismiss IRP Compl. at 19-20.

contend that the relevant state antitrust claims should be dismissed because Group 1 EPPs' and IRPs' complaints lack specific allegations connecting Group 1 Defendants' alleged conduct to each state where they raise a state antitrust claim and instead include only conclusory allegations that Group 1 Defendants' alleged conduct "substantially affected" the commerce of each relevant state.[92] Group 1 Defendants assert that the Group 1 EPPs' allegations do not allow the Court to "assess whether the conduct had an incidental or substantial effect – if any at all – on the states under which the EPPs bring their claims."[93] Similarly, they argue that the Group 1 IRPs' allegations of a nationwide conspiracy with "conclusory and identical allegations for each state, including unspecific assertions that the conspiracy restrained competition, raised prices, and substantially affected commerce in that state" are not enough to plead a substantial effect on intrastate commerce.[94]

Group 1 EPPs respond that to withstand dismissal, no more is needed than their allegations that class members made purchases of the Group 1 drugs at supracompetitive prices within the states relevant to their state law claims.[95] They argue that "[s]tate statutes do not require that the anticompetitive *conduct* (*i.e.*, the act of conspiring) occur within the state, so long as the adverse *effects* are felt within the state. Moreover, the alleged effects need not occur entirely or even predominately within a state to meet the requirement."[96] Similarly, Group 1

---

[92] *See, e.g.*, PV Defs' Mem in Support of Mot. to Dismiss EPP Compl. at 20.

[93] *Id.*

[94] PV Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 19; *see also* CB Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 13-14 (arguing the clobetasol IRPs' state antitrust claims should be dismissed where "IRPs fail to allege that any conspiratorial conduct actually transpired in any of the [relevant] jurisdictions, nor do they provide anything other than boilerplate legal conclusions that the alleged price-fixing substantially affected markets in these jurisdictions").

[95] *See* PV EPP Opp. Mem. at 30.

[96] CB EPP Opp. Mem. at 29.

IRPs argue that "there can be no question that it is at least plausible that each of the [relevant] states suffered a substantial effect on commerce within its borders" where they have alleged that "wholesalers, pharmacies, patients and their health plans were all illegally overcharged for generic drugs" as a result of Group 1 Defendants' alleged conduct.[97]

Other courts have held that plaintiffs sufficiently pled state antitrust claims where they alleged a "nationwide antitrust violation that increased prices paid by the end payors in each state," rejecting an arguments that state law antitrust claims should be dismissed because the relevant state laws "target only anticompetitive conduct that occurs solely or predominantly within the borders of the state . . . ."[98]  At this stage of the litigation, the Court agrees that the Group 1 EPPs' and IRPs' allegations of a broad nationwide-scheme to fix generic drug prices are enough to satisfy the nexus requirement for asserting claims under the relevant state antitrust laws.[99]  "[I]t is not obvious why the *intra* state effect of anticompetitive conduct would not be

---

[97] PV IRP Opp. Mem. at 14.

[98] *In re Solodyn*, 2015 WL 5458570, at *16 (declining to dismiss the end payor plaintiffs' District of Columbia, Hawaii, Massachusetts, Mississippi, Nevada, New Hampshire, New York, Oregon and West Virginia antitrust claims).

[99]  *See In re Suboxone*, 64 F. Supp. 3d at 698–99 (determining similar intrastate effects allegations were sufficient to permit the plaintiffs' Mississippi and Nevada antitrust claims to withstand dismissal); *In re Liquid Aluminum Sulfate*, 2017 WL 3131977, at *24 ("pleading intrastate conduct and allegations of nationwide price-fixing satisfies the nexus requirement for asserting claims under" the antitrust statutes of California, the District of Columbia, Kansas, Nebraska, Nevada, New York, North Carolina, North Dakota, South Dakota, Tennessee, and West Virginia); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 580–82 (the plaintiffs' allegations of a nationwide price-fixing conspiracy were adequate to state a claim under the antitrust laws of Nevada, South Dakota, Tennessee, West Virginia, and Wisconsin); *In re Dig. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 407–08 (S.D.N.Y. 2011) (nexus requirement satisfied for the District of Columbia, Michigan, South Dakota, Tennessee, West Virginia, and Wisconsin antitrust laws where the plaintiffs' complaint alleged the defendants' "conduct was in a continuous and uninterrupted flow of intrastate and interstate commerce throughout the United States") (internal quotation marks omitted); *see also Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 397 (E.D. Pa. 2010) (holding that the plaintiffs sufficiently alleged a claim under the Minnesota antitrust law where they alleged that the defendants' actions forced purchasers to pay more for a drug because subsection b of Minn. Stat. § 325D.54 "does not on its face require any substantial in state effect"); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 172 (D. Me. 2004) ("the New Mexico antitrust provision makes it crystal clear that only the trade or commerce, not necessarily the conspiracy, must be within the state" and "further specifies that an effect on, or involvement of, interstate or foreign commerce does not bar application of the state statute"); *In re Microsoft Antitrust Litig.*, No. 99-709, 2001 WL 1711517, at *1 (Me.

reached by the cited statutes merely because *inter* state conduct predominates."[100]  Whether EPPs

and/or IRPs will later be able to prove the requisite nexus is a separate question to be addressed

later in this litigation.  "The fact-based inquiry can take place after discovery, at summary

judgment."[101]

### d.    Citizenship or Residency Requirements

Group 1 Defendants argue that certain of the Group 1 EPPs' and IRPs' state antitrust law

claims must be dismissed because the relevant state antitrust statutes include citizenship or

residency requirements that Group 1 EPPs and IRPs have not supported with sufficient

allegations.[102]  Indeed, the Utah Antitrust Act specifies that "[a] person who is a *citizen* of this

state or a *resident* of this state" is permitted to bring a claim.[103]  Group 1 EPPs and IRPs respond

---

Super. Ct. Mar. 26, 2001) (explaining that "the phrases 'in this State' and 'of this State' [in the Maine antitrust statute] modify 'trade or commerce' and not the illegal conduct," supporting a finding that allegations of intrastate effects are enough to plead a violation of the Maine antitrust statute).  *But see In re Dealer Mgmt. Sys. Antitrust Litig., MDL 2817*, No. 18-864, 2019 WL 334340, at *25 (N.D. Ill. Jan. 25, 2019) (dismissing the plaintiffs' Tennessee antitrust law claim where they had "not identified any Tennessee-specific allegations supporting [their] claim"); *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 14-md-2508, 2015 WL 5166014, at *26 (E.D. Tenn. June 24, 2015) (dismissing the plaintiffs' claims under the antitrust laws of the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, Wisconsin, and West Virginia because their allegations were "conclusory" and did not "address[ ] any connection between the individual state and the wrongful conduct").

[100] *In re Aggrenox*, 94 F. Supp. 3d at 253; *see also In re Auto. Parts Antitrust Litig. (In re Instrument Panel Clusters)*, No. 12-md-02311, 2014 WL 2993753, at *16 (E.D. Mich. July 3, 2014) ("This Court is not persuaded that an incidental versus a substantial in-state injury, which is a fact-based inquiry, can be assessed at this stage of the proceedings.").

[101] *In re Remicade Antitrust Litig.*, No. 17-04326, 2018 WL 6446611, at *12 (E.D. Pa. Dec. 7, 2018).

[102] *See* CB Defs' Mem in Support of Mot. to Dismiss EPP Compl. at 22 (Utah); DG Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 19 (Utah); DV Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 18 (Utah); DX Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 20 (Utah); EC Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 16 (Utah); PV Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 18-19 (South Dakota) and 20 (Utah); CB Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 27 (Utah); DV Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 20-21 (Utah); DX Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 21-22 (Utah); EC Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 11 (Utah); PV Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 20-21 (South Dakota and Utah).

[103] Utah Code Ann. § 76-10-3109(1)(a) (emphasis added).  Although pravastatin Defendants assert that a similar requirement applies under the South Dakota antitrust law, they cite neither statute nor case law to suggest that a similar requirement exists under South Dakota law.

that that dismissal is not warranted because "nothing in the relevant statutes requires that the *named Plaintiffs* in class actions be citizens or residents . . . ."[104] They assert that there are members of the putative Group 1 EPP and IRP classes that made purchases or reimbursements for the Group 1 drugs in each relevant U.S. and state territory at supracompetitive prices and that no more is needed for their claims to withstand dismissal.[105] The Court agrees with EPPs and IRPs. "Allegations that members of the putative class presumably include Utah [and, in this case, South Dakota] citizens and residents are sufficient to overcome a motion to dismiss."[106] Defendants' motions will be denied to the extent that they seek to dismiss Group 1 EPPs' and IRPs' claims for failure to sufficiently allege they have met citizenship or residency requirements set forth under the antitrust laws of South Dakota and Utah.

### e.     Rhode Island:  Partial *Illinois Brick* Bar

Group 1 Defendants contend that the divalproex ER and doxycycline EPPs and IRPs cannot seek redress under the Rhode Island antitrust law[107] for their claims concerning alleged overcharges incurred before July 15, 2013, arguing that the state's *Illinois Brick* repealer statute, enacted on that date, does not apply retroactively.[108] The Court agrees.  Divalproex ER and

---

[104] PV EPP Opp. Br. at 28.

[105] *See, e.g.*, CB EPP Opp. Br. at 27-28; *see also* CB IRP Opp. Br. at 14 ("IRPs concede that no named pharmacy is a citizen or resident of Utah.  This claim is brought in a representative capacity.").

[106] *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharm., Inc.*, No. 15-01100, 2018 WL 6378457, at *11 (M.D. Tenn. Dec. 5, 2018); *see also In re Liquid Aluminum Sulfate*, 2017 WL 3131977, at *28 (declining to dismiss the Plaintiffs' Utah antitrust claim where they alleged that "members of the putative classes made purchases in Utah"); *In re Asacol*, 2016 WL 4083333, at *13 (same).  *But see In re Lipitor*, 336 F. Supp. 3d at 419 ("[B]ecause there must be at least one named plaintiff who is a Utah citizen or resident in order to establish standing for the putative class, EPPs' claims under the Utah Antitrust Act are dismissed without prejudice.")*; In re Niaspan*, 42 F. Supp. 3d at 759–60 ("at least one named plaintiff must be a citizen or resident of Utah in order to seek classwide relief under the Utah Antitrust Act").

[107] R.I. Gen. Laws § 6–36–7(d).

[108] *See* Defs.' Mem. in Support of Mot. to Dismiss DV EPP Compl. at 18; Defs.' Mem. in Support of Mot. to Dismiss DV IRP Compl. at 20 n.14; Defs.' Mem. in Support of Mot. to Dismiss DX EPP Compl. at 19; Defs.' Mem. in Support of Mot. to Dismiss DX IRP Compl. at 21.

doxycycline EPPs and IRPs have not cited a decision that would support a conclusion to the contrary. Courts that have considered the question have determined that the Rhode Island statute is prospective, not retroactive.[109] Divalproex ER and doxycycline EPPs and IRPs may not recover for any alleged overcharges incurred before the Rhode Island *Illinois Brick*-repealer statutes took effect, but may proceed with their claims for alleged overcharges incurred on or after July 15, 2013.

## 2. STATE CONSUMER PROTECTION CLAIMS

Group 1 EPPs' and IRPs' state consumer protection claims rest on the same allegations as the direct purchasers' underlying federal antitrust claims which the Court has already determined sufficient to support plausible antitrust claims. As with Group 1 EPPs' and IRPs' state antitrust claims, Group 1 Defendants argue that many of their state consumer protection claims should be dismissed for failure to state a claim.

Group 1 EPPs respond that the same "detailed and extensive factual allegations" that support their federal antitrust claims also "demonstrat[e] that Defendants engaged in an unfair, deceptive and unconscionable scheme to fix prices and allocate markets, thereby causing harm to consumers and third-party payers in each state, who paid supracompetitive prices and were deprived of the benefits of free and open competition."[110] Likewise, Group 1 IRPs assert that

---

[109] *See In re Effexor Antitrust Litig.*, 337 F. Supp. 3d 435, 460 (D.N.J. 2018) ("Rhode Island's repealer does not apply retroactively"); *In re Lipitor*, 336 F. Supp. 3d at 419 ("courts have consistently held that the Rhode Island repealer applies prospectively"); *In re Solodyn*, 2015 WL 5458570, at *15 (finding the Rhode Island repealer law applies prospectively); *In re Aggrenox*, 94 F. Supp. 3d at 253 ("In the absence of evidence of the Rhode Island legislature's intent to the contrary, I conclude that the law applies only prospectively."); *In re Cast Iron*, 2015 WL 5166014, at *22 (dismissing IPPs' claims brought pursuant to Rhode Island's Antitrust Act, to the extent the "claims alleg[ed] overcharges before July 15, 2013"); *In re Niaspan*, 42 F. Supp. 3d at 759 (finding the Rhode Island repealer statute applies prospectively in the absence of legislative intent to the contrary).

[110] CB EPP Opp. Mem. at 30; DG EPP Opp. Mem. at 35; DV EPP Opp. Mem. at 33; DX EPP Opp. Mem. at 34; EC EPP Opp. Mem. at 31; PV EPP Opp. Mem. at 31.

Defendants' alleged "deceptive conduct regarding pricing is actionable as an unfair or unconscionable trade practice, independent of any antitrust cause of action."[111]

Group 1 EPPs and IRPs have the better argument. Their Complaints contain detailed factual allegations that make plausible their claims that Group 1 Defendants engaged in unfair competition and they need not reiterate these facts in their consumer protection law counts.[112] The Court considers Defendants' additional state specific arguments for dismissal of Group 1 EPPs' and IRPs' state consumer protection claims below.

### a.    *Illinois Brick* Does Not Preclude State Consumer Protection Claims

Group 1 Defendants assert that because the Group 1 EPPs' and IRPs' state consumer protection law claims are just repackaged federal antitrust claims, they cannot be used to circumvent the *Illinois Brick* prohibition on indirect purchaser claims in Alaska, Florida, Missouri, Montana, New Jersey and South Carolina. They argue that EPPs and IRPs cannot simply dress up their antitrust claim as a consumer protection claim. In response, EPPs argue that *Illinois Brick* does not nullify (or even address) state consumer protection claims. IRPs assert that if they had made these claims without alleging any antitrust claim, Defendants would have no argument for dismissal and their consumer protection claims should not be dismissed merely because they are pleaded in the same complaint.

---

[111] CB IRP Opp. Mem. at 15; DG IRP Opp. Mem. at 15; DV IRP Opp. Mem. at 16; DX IRP Opp. Mem. at 14; EC IRP Opp. Mem. at 16; PV IRP Opp. Mem. at 17-18.

[112] *See Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis PLC*, No. 15-6549, 2018 WL 7197233, at *35 (S.D.N.Y. Dec. 26, 2018) ("the factual allegations that support the IPP's claims are well-pleaded throughout the Complaint, and it is not necessary that the IPP reiterate each of them when listing its causes of action in the final section of the Complaint"); *see also In re Domestic Drywall Antitrust Litig.*, No. 13- 2437, 2016 WL 3769680, at *11 (E.D. Pa. July 13, 2016) ("To the extent Defendants' one-paragraph [Twombly] argument is an invitation for the Court to comb through all of Plaintiffs' consumer protection claims and determine whether the elements have been adequately pleaded, the Court respectfully declines the invitation.").

The Court agrees with EPPs and IRPs that Defendants' "repackaging" argument is not enough to require dismissal of EPPs' and IRPs' consumer protection law claims. Because "states remain free to permit recovery by indirect purchasers," Group 1 EPPs and IRPs are not barred from pursuing such a recovery under the various state consumer protection laws so long as their allegations are enough to plead the relevant consumer protection violation.[113]

Further, with respect to EPPs' and IRPs' Florida consumer protection claims, Florida courts have held that the Florida Deceptive and Unfair Trade Practices Act does not have the same indirect purchaser restriction as the state's antitrust law.[114] Accordingly, the Court "decline[s] to dismiss the claims for monopolization and attempted monopolization brought under the FDUTPA on *Illinois Brick* grounds."[115] Similarly, *Illinois Brick* does not bar EPPs' or IRPs' claims under the Alaska Unfair Trade Practices and Consumer Protection Act,[116] the Missouri Merchandising Practices Act,[117] the Montana Unfair Trade Practices and Consumer

---

[113] *In re Domestic Drywall,* 2016 WL 3769680, at *11 (rejecting the Defendants' argument that dismissal of all of the Plaintiffs' state consumer protection claims was warranted because the claims were an attempt "to build a Frankensteinian equivalent of a direct purchaser claim") (citation, internal quotation and alterations omitted)*; see also In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1080 (S.D. Cal. 2017) ("[J]ust because the same course of conduct gives rise to recovery under two distinct statutory provisions does not mean that a bar to recovery under one necessarily applies with equal force to the other.").

[114] *See In re Fla. Microsoft Antitrust Litig.*, No. 99-27340, 2002 WL 31423620, at *2 (Fla. Cir. Ct. Aug. 26, 2002) ("Indirect purchasers of a monopolist's or price fixer's products, such as Plaintiffs here, may bring suit under the Florida [Deceptive and Unfair Trade Practices Act].").

[115] *In re Suboxone*, 64 F. Supp. 3d at 699 n.23.

[116] Alaska Stat. Ann. § 45.50.531(a) ("A person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by [Ak. Stat.] 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater. . . Nothing in this subsection prevents a person who brings an action under this subsection from pursuing other remedies available under other law, including common law."); *see Matanuska Miad, Inc. v. Alaska*, 620 P.2d 182, 185 (Ak. 1980) (finding the same conduct could be found to violate both the Alaska antitrust and consumer protection statutes); *but see In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1163 (N.D. Cal. 2015) (declining to allow an indirect purchaser claim under the Alaska consumer protection law "since no court has affirmatively found to the contrary, and since, under the current status of the law in Alaska, only the attorney general may sue for money damages on behalf of indirect purchasers as a result of *antitrust* violations") (emphasis added).

[117] *Sheet Metal Workers Local 441 Health & Welfare Plan*, 737 F. Supp. 2d at 415 (rejecting the defendants' argument that indirect purchasers were barred from asserting claims under the Missouri consumer

Protection Act[118], the New Jersey Consumer Fraud Act,[119] or the South Carolina Unfair Trade Practices Act.[120]

### b.   State Consumer Protection Statutes Permit Claims for Anticompetitive Conduct

Defendants make a similar argument that the consumer protection laws of Arkansas, the District of Columbia, Florida, Georgia, New Mexico, Rhode Island, and West Virginia do not cover Group 1 EPPs' and IRPs' claims that Defendants engaged in anticompetitive conduct because "those laws do not encompass actions based on allegations of an antitrust conspiracy."[121] Group 1 EPPs and IRPs respond that courts have liberally construed these statutes to include conduct that would also be covered by antitrust laws.[122]  They also argue that "these states model their consumer protection statutes on the Federal Trade Commission ('FTC') Act, which

---

protection law); *see also In re Packaged Seafood Prods.*, 242 F. Supp. 3d at 1079 (holding "*Illinois Brick* does not bar indirect-purchaser claims under the MMPA").

[118] Mont. Code Ann. § 30-14-103 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful); *see In re New Motor Vehicles*, 350 F. Supp. 2d at 193 ("application of the Montana consumer protection statute is not limited to those who engage directly in consumer transactions").

[119] N.J. Stat. Ann. § 56:8-1 *et seq.*; *see* N.J. Stat. Ann. § 56:8-19 ("Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.").  The Court notes that EPPs have now withdrawn their New Jersey Consumer Protection Act Claims.  *See supra* n.8.  IRPs have not.

[120]  S.C. Code Ann. § 39-5-10, et seq.; *see* S.C. Code Ann. § 39-5-140 ("Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by [the South Carolina Unfair Trade Practices Act] may bring an action individually, but not in a representative capacity, to recover actual damages.").

[121] Defs.' Mem. in Support of Mot. to Dismiss DV IRP Compl. at 25-26; *see* Defs.' Mem. in Support of Mot. to Dismiss EC EPP Compl. at 20-21; Defs.' Mem. in Support of Mot. to Dismiss PV EPP Compl. at 23-24; Defs.' Mem. in Support of Mot. to Dismiss DV IRP Compl. at 25-26; *see also* Defs.' Mem. in Support of Mot. to Dismiss DG IRP Compl. at 13-14 (arguing plaintiffs cannot circumvent Florida's limitation on indirect purchaser antitrust claims "by dressing up their antitrust claim as a consumer protection claim").

[122] *See, e.g.,* DG EPP Opp. Mem. at 36-41; DV IRP Opp. Mem. at 18-19.

encompasses claims based on antitrust violations."[123]

Defendants have not made a persuasive argument as to why Group 1 EPPs and IRPs cannot assert consumer protection claims under the laws of these states simply because they also assert antitrust claims.[124] Whether they can ultimately prove a consumer protection claim separate and apart from their antitrust claims is not a question for resolution at this stage of the litigation.

### c. Class Action Bars Under State Consumer Protection Laws

Group 1 Defendants also challenge certain of Group 1 EPPs' and IRPs' claims under the consumer protection laws of Alaska, Georgia, Montana, South Carolina, and Utah, arguing that the relevant state laws do not permit them to proceed with their consumer protection claims in a class action.[125] The Court will consider their challenges with respect to each state law.

---

[123] PV EPP Opp. Mem. at 32; *see* 15 U.S.C.A. § 45(a)(1).

[124] *See, e.g.*, *In re Liquid Aluminum Sulfate*, 2017 WL 3131977, at *23 (permitting plaintiff to proceed with antitrust claims and claims under the Florida Deceptive and Unfair Trade Practices Act); *In re Packaged Seafood Prods.*, 242 F. Supp. 3d at 1084–85, 1087 (declining to dismiss the plaintiffs' Rhode Island and West Virginia consumer protection law claim on the basis of the defendants' arguments that the statutes do not recognize a cause of action for price-fixing); *In re Chocolate Confectionary*, 602 F. Supp. 2d at 583 (declining to dismiss the plaintiffs' Arkansas Deceptive Trade Practices Act claim citing the Arkansas Supreme Court's conclusion that liberal construction of the statute was appropriate) (citations omitted); *id.* at 586 (finding the plaintiffs had sufficiently pled a claim under the New Mexico Unfair Practices Act where they alleged that a "plaintiff had paid approximately 30% more for a product as a result of price fixing"); *Dist. Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 723 (D.C. Ct. App. 2003) ("Trade practices that violate other laws, . . . also fall within the purview of the" District of Columbia Consumer Protection Procedures Act.); Ga. Code Ann. § 10-1-391(a) (West) ("The purpose . . . shall be to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the General Assembly that such practices be swiftly stopped, and this part shall be *liberally construed* and applied to promote its underlying purposes and policies.") (emphasis added).

[125] CB Defs' Mem in Support of Mot. to Dismiss EPP Compl. at 26 *(*Alaska, Georgia, Montana, South Carolina, Utah); DG Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 24-25 (Georgia, Montana, South Carolina, Utah); DV Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 20-21 (Georgia, Montana, South Carolina); DX Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 24-25 (Georgia, Montana, South Carolina, Utah); EC Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 20 (Georgia, Montana, South Carolina, Utah); PV Defs.' Mem. in Support of Mot. to Dismiss EPP Compl. at 23 (Alaska, Georgia, Montana, South Carolina); CB Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 28 (Alaska, Georgia, South Carolina); DV Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 24-25 (Georgia, South Carolina); DX Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 25 (Georgia, South Carolina); EC Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 13 (Georgia, South Carolina, Utah); PV Defs' Mem in Support of Mot. to Dismiss IRP Compl. at 24 (Alaska,

First, a class action bar does not require dismissal of Group 1 EPPs' Utah consumer protection claims. The Utah Consumer protection law "does not prohibit class actions; rather, it provides that class members may only seek actual, not statutory, damages."[126]

Further, Group 1 EPPs and IRPs allege that Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska Statute § 45.50.471, *et seq.*, a consumer protection statute that does not include a provision restricting class action claims.[127] Arguing that the Group 1 EPP and IRP Alaska consumer protection claims are subject to a class action bar, Defendants instead cite a decision that relies on a provision of the separate Alaska antitrust statute, Alaska Statute § 45.50.577(i).[128] Group 1 EPPs' and IRPs' Alaska consumer protection claims therefore are not subject to dismissal because of a class action bar.

Further still, Defendants seek to dismiss Group 1 EPPs' and IRPs' Georgia consumer protection claims, citing the class action bar in the Georgia Fair Business Practices Act, which provides that "[a]ny person . . . may bring an action individually, but not in a representative capacity . . . ."[129] However, Group 1 EPPs' and IRPs' complaints do not specifically assert

---

Georgia, South Carolina). Defendants do not raise this argument with respect to digoxin IRP's state consumer protection claims.

[126] DV EPP Opp. Br. at 42 (*citing* Utah Code Ann. § 13-11-19(4)(a) (permitting class actions for "actual damages" caused by certain statutory violations) and Utah Code Ann. § 13-11-19(2) (consumers may recover "but not in a class action" actual or statutory damages "whichever is greater")); *see In re Solodyn*, 2017 WL 4621777, at *20 (declining to exclude Utah class members from a class action asserting Utah consumer protection law claims because the "law provides that class members waive statutory damages; it does not bar class actions").

[127] *See, e.g.* DG EPP Compl. ¶ 256; DG IRP Compl. ¶ 228.

[128] *See, e.g.* Defs.' Mem. in Support of Mot. to Dismiss DG EPP Compl. at 22.

[129] Ga. Code Ann. § 10-1-399(a). *See* Defs' Mem. in Support of Mot. to Dismiss DG EPP Compl. at 24 (citing the Georgia Fair Business practices Act and argument that "Georgia does not permit class actions either").

claims under the Georgia Fair Business Practices Act.[130]  Instead, their complaints allege that

"Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or

practices in violation of the Georgia Uniform Deceptive Trade Practices Act, Georgia Code § 10-

1-370, et seq."[131]  That statute does not include the same class action bar as the Georgia Fair

Business Practices Act.  In the absence of such a bar, the Court will not dismiss Group 1 EPPs'

or IRPs' Georgia consumer protection claims on that basis.  Nevertheless, the Court notes that

unlike the Georgia Fair Business Practices Act, which permits a recovery of damages,[132] the sole

remedy available under the Georgia Uniform Deceptive Trade Practices Act is injunctive

relief.[133]  Accordingly, the Court will dismiss Group 1 EPPs' and IRPs' Georgia Uniform

Deceptive Trade Practices Act claims to the extent that they seek monetary relief for such claims.

     Finally, Defendants argue that class action bars preclude Group 1 EPPs' and IRPs' South

Carolina[134] consumer protection claims and Group 1 EPPs' Montana[135] consumer protection

claims.  Here, as with Group 1 EPPs' and IRPs' Illinois Antitrust Act claims, the analysis

depends on whether the relevant state class action bar provisions are procedural or substantive.

Defendants contend that the provisions are substantive because they are "intertwined" with the

---

[130] Ga. Code Ann. § 10-1-390, et seq.

[131] CB EPP Compl. ¶ 295; DG EPP Compl. ¶ 263; DV EPP Compl. ¶ 261; DX EPP Compl. ¶ 295; EC EPP Compl. ¶ 268; PV EPP Compl. ¶ 315; CB IRP Compl. ¶ 287; DG IRP Compl. ¶ 234; DV IRP Compl. ¶ 259; DX IRP Compl. ¶ 323; EC IRP Compl. ¶ 224; PV IRP Compl. ¶ 249.

[132] *See* Ga. Code Ann. § 10-1-390, et seq.

[133] *See* Ga. Code. Ann. § 10-1-373(a)*; Moore-Davis Motors, Inc. v. Joyner*, 556 S.E.2d 137, 140 (Ga. Ct. App. 2001); *see also* Defs.' Mem. in Support of DG EPP MTD at 25 n.15.

[134] South Carolina's Unfair Trade Practices Act provides that a person damaged by violation of the statute "may bring an action individually, but not in a representative capacity." S.C. Code Ann. § 39-5-140(a).

[135] Consumers may "bring an individual but not a class action" under the Montana Consumer Protection Act.  Mont. Code Ann. § 30-14-133(1).

substantive rights granted by the statutes.[136]  EPPs and IRPs argue that the provisions are

procedural – that they affect only how the consumer protection claims are processed.[137]  There is

no controlling authority or a consensus among the District Courts that have considered the effect

of these class action bars, and the Court has determined that the class action bar provisions

specifically included in the Montana and South Carolina consumer protection laws reflect a

substantive policy choice.[138]  Plaintiffs may not pursue these claims as class claims.  To the

extent that plaintiffs wish to pursue these claims on an individual basis, they may if they have

Article III standing to assert the claims.

### d.        Purely or Primarily Intrastate Conduct

Group 1 Defendants argue that the consumer protection laws of certain states (Delaware,

Florida, Massachusetts, New Hampshire, New York, North Carolina, Vermont) require that

Plaintiffs' consumer protection claims arise from purely or primarily intrastate conduct or an in-

state injury and that Group 1 EPPs and IRPs have not alleged any misconduct that is specific to

these states.[139]  Group 1 EPPs and IRPs respond that they have alleged that because of

---

[136] *See, e.g.* DV Defs.' IRP Reply Br. at 11.

[137] *See, e.g.* DG EPP Opp. Br. at 44-45.

[138] *See In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d at 416 (holding the class action bar in the Montana consumer protection act controls in federal court); *In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) ("the prohibitions against class actions ingrained in the very text of the [South Carolina Unfair Trade Practices Act]" . . . . are substantive portions of South Carolina law and are not trumped by Federal Rule of Civil Procedure 23, even in light of the *Shady Grove* decision"); *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1013 (E.D. Mich. 2014) (holding the plaintiffs could not bring their South Carolina Unfair Trade Practices claim on behalf of a class). *But see In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-864, 2019 WL 334340, at *27 (N.D. Ill. Jan. 25, 2019) (denying a motion to dismiss the Plaintiff's class claims under the South Carolina consumer protection law because the "Defendant has not identified any authority for concluding that the class action bars at issue are so intertwined with a state-created right or remedy as to justify finding that it trumps Rule 23"); *In re Broiler Chicken*, 290 F. Supp. 3d at 820–21 (declining to dismiss the plaintiff's Montana and South Carolina consumer protection laws claims on the basis of the statutory class action bars); *In re Packaged Seafood Prods.*, 242 F. Supp. 3d 1086 ("the Court concludes that the [South Carolina Unfair Trade Practices Act] class-action bar is a procedural rather than substantive rule").

[139] *See* Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 30; Defs.' Mem. in Support of Mot. to Dismiss DG EPP Compl. at 29; Defs.' Mem. in Support of Mot. to Dismiss DV EPP Compl. at 25; Defs.' Mem.

Defendants' alleged actions, prices for the Group 1 drugs were elevated, class members made purchases at supracompetitive prices, and competition was suppressed within each state where they assert a consumer protection claim.[140]  The Court agrees with Group 1 EPPs and IRPs that – at this stage of the litigation – their allegations of a broad nationwide-scheme to fix generic drug prices are sufficient to satisfy the intrastate pleading requirements of the state consumer protection laws under which they pursue their claims.[141]  Whether the Group 1 EPPs or IRPs will ultimately establish facts sufficient to prove each of their state consumer protection law claims is a question that remains to be addressed later in this litigation.

### e.    Deceptive or Unconscionable Conduct

Group 1 Defendants also argue that EPPs' and IRPs' claims under the consumer protection statutes of various states fail because their complaints do not sufficiently allege fraud or deception.  Specifically, they contend that the consumer protection laws of Arkansas,

---

in Support of Mot. to Dismiss DX EPP Compl. at 29-30; Defs.' Mem. in Support of Mot. to Dismiss EC EPP Compl. at 29; Defs.' Mem. in Support of Mot. to Dismiss PV EPP Compl. at 22-23; Defs.' Mem. in Support of Mot. to Dismiss CB IRP Compl. at 30; Defs.' Mem. in Support of Mot. to Dismiss DG IRP Compl. at 20; Defs.' Mem. in Support of Mot. to Dismiss DV IRP Compl. at 30-32; Defs.' Mem. in Support of Mot. to Dismiss DX IRP Compl. at 30-32; Defs.' Mem. in Support of Mot. to Dismiss DV IRP Compl. at 30-32.  This argument does not appear in Defendants' briefs in support of their motions to dismiss the econazole or pravastatin IRP complaints.

[140] *See* PV EPP Opp. Br. at 38.

[141] *See In re Domestic Drywall*, 2016 WL 3769680, at *9 (finding allegations of wholly intrastate commerce are not required under North Carolina consumer protection law); *Sergeants Benevolent Ass'n Health & Welfare Fund*, 2018 WL 7197233, at *44 (finding plaintiffs' allegations of drug sales "affecting consumers and third party payors across the country, including in Massachusetts" sufficient to satisfy "intrastate" pleading requirements); *Sheet Metal Workers Local 441 Health & Welfare Plan*, 737 F. Supp. 2d at 409 ("[I]ndirect payor plaintiffs may assert a cause of action under the FDUTPA for claims arising in Florida based on reimbursement for purchases of over-priced drugs, even when the alleged injuries did not take place entirely within Florida."); *cf. In re Loestrin 24 FE*, 261 F. Supp. 3d at 361 (holding that it would be more efficient to address questions including whether the plaintiffs had sufficiently alleged intrastate conduct at the class certification, explaining that "[i]t is conceivable, for example, that the Court could deny class certification, which would obviate the need to consider the arguments with respect to some of the states").

The Court also notes that, in at least some instances, Group 1 EPPs and IRPs include allegations specific to the in-state injury that Defendants contend are lacking. *See, e.g.*, DV IRP Opp. Br. at 22-24 (rebutting Defendants' argument that divalproex ER IRPs had not pled a plausible claim under the New York Consumer protection law because their complaint includes an allegation that "Falconer Pharmacy . . . located in Falconer, New York . . . indirectly purchased . . . Defendants' generic Divalproex products") (*citing* PV IRP Compl. ¶ 26)).

Colorado, Delaware, Florida, Michigan, Minnesota, New Mexico, New York, North Dakota, South Dakota, and Wisconsin require more than an allegation that "Defendants misrepresented to all purchasers during the Class Period that Defendants' [Group 1 drug] prices were competitive and fair."[142] Defendants argue that EPPs' and IRPs' complaints should include allegations of particular "instances where Defendants made such representations."[143] They also argue that "the absence of any well-pled facts in support of deceptive or unconscionable conduct . . . also infects the Complaints' claims pursuant to the Utah and Virginia consumer protection laws."[144]

Group 1 EPPs respond that to the extent they are required to plead deceptive conduct under any of the cited statutes, they have done so because their Complaints allege "an illegal price-fixing conspiracy among Defendants, hatched in secret and maintained through deception, during which Defendants misleadingly conveyed to Plaintiffs and the market that pricing for Defendants' products was competitive."[145] They also contend that "unconscionable" conduct has been recognized to encompass "a broad swath of activities, including price-fixing conspiracies."[146] Group 1 IRPs respond that they have pled facts in support of a finding that Defendants' conduct was unconscionable, explaining that the drug pricing data referenced in their complaints shows that Defendants consistently offered low prices for the Group 1 drugs before the alleged price increases which, they contend increased despite no change in the product or increase in costs for raw materials, labor or overhead.[147]

---

[142] *See, e.g.*, Defs.' Mem. in Support of Mot. to Dismiss PV EPP Compl. at 25 (*citing* PV EPP Compl. ¶ 333).

[143] *Id.*

[144] *Id.*

[145] DG EPP Opp. Br. at 46-47.

[146] *Id.* at 47-48.

[147] PV IRP Opp. Br. at 21.

At this stage of the litigation, Group 1 EPPs and IRPs have sufficiently alleged that Defendants engaged in deceptive and/or unconscionable conduct to permit their claims to withstand dismissal.  First, Group 1 EPPs' and IRPs' consumer protection claims rest on Defendants' alleged unconscionable or deceptive conduct, not on fraud.  Therefore, their claims do not require application of the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  Further, even if Rule 9(b) does apply to the allegations supporting Group 1 EPPs' or IRPs' consumer protection claims, their allegations would be sufficient to withstand dismissal.  To satisfy Rule 9(b), plaintiffs "must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."[148]  Group 1 EPPs' and IRPs' Complaints include detailed allegations regarding Group 1 Defendants' trade association memberships, their representation on trade association boards, and attendance at industry gatherings the prices of the Group 1 drugs and the timing of price increases along with detailed allegations regarding the prices of the Group 1 Drugs and the timing and size of alleged price increases.  The Complaints are sufficiently detailed to "inject precision" into EPPs' and IRPs' consumer protection claims at this stage of the litigation.  Whether Group 1 EPPs or IRPs will be able to meet their burden to show deceptive or unconscionable conduct on the developed evidentiary record at summary judgment or trial is a question for another day.

### f.    Statutory Definition of a "Consumer"

Group 1 Defendants argue the state consumer protection claims of certain EPPs and IRPs must be dismissed because they do not meet the requirements of statutes that permit suits only by

---

[148] *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 09-730, 2013 WL 5761202, at *8 (E.D. Pa. Oct. 23, 2013).

certain types of consumers.[149]  They also argue that Group 1 EPPs' and IRPs' claims fail under

the consumer protection laws of certain states that limit their protections to those who purchased

"goods or services primarily for personal, family, or household purposes."[150]

In response, EPPs note that they and the putative class they represent includes *both*

individuals and third party payers such as employee welfare benefit funds, labor unions, and

private insurers.[151]  And, to the extent that they are not individual consumers, EPPs assert that

they fall within the relevant state statutes' definitions of a "consumer" in that they

> participate in consumer transactions by paying some or all of the prices charged to
> individual consumers, and, as a result, pay a portion of any overcharges.  These
> purchases are made for the personal purposes of the patient.  [Third party payors]
> do not purchase drugs for resale, distribute products or act as intermediaries in the
> distribution chain.[152]

To the extent that Group 1 Defendants contend that IRPs' North Carolina consumer protection

claims should be dismissed, IRPs respond that Defendants have not "cite[d] any authority

limiting the statute to consumers who purchased for household purposes only."[153]  IRPs also

assert that their "California consumer protection claims are validly asserted" because they "did

indeed purchase the drugs in question."[154]  In addition, IRPs respond to Defendants' "consumer

---

[149] *See, e.g.* Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 32 (arguing that EPPs are not consumers under the meaning of the consumer protection laws of California, Michigan, Vermont, and the District of Columbia); Defs.' Mem. in Support of Mot. to Dismiss CB IRP Compl. at 30 ("IRPs – independent pharmacies that bought generic Clobetasol for resale to consumers – cannot bring claims under the consumer protection laws of California, Michigan, Nevada, North Carolina, and West Virginia . . . because they are not consumers, they did not purchase Clobetasol for consumer purposes, and they are plainly not elderly or disabled persons.").

[150] *See, e.g.* Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 32 (arguing that the consumer protection statutes of the District of Columbia, Hawaii, Missouri, Montana, Nevada, Rhode Island, and West Virginia limit recovery to those who made purchases "primarily for personal, family, or household purposes").

[151] CB EPP Opp. Mem. at 45.

[152] *Id.*

[153] DX IRP Opp. Mem. at 21.

[154] CB IRP Opp. Mem. at 21.

definition" arguments by voluntarily dismissing their claims under the Michigan and Nevada consumer protection statutes.[155]

Group 1 EPPs and IRPs have plausibly alleged that they are entitled to recover for state consumer protection violations on behalf of at least some of the named plaintiffs and members of the putative class in each of their Complaints. This is enough to permit their California, District of Columbia, Hawaii, Massachusetts, Michigan, Missouri, Montana, Nevada, Rhode Island, and Vermont consumer protection law claims to proceed.[156] Whether EPPs and/or IRPs will

_____

[155] *See, e.g.* DX IRP Opp. Mem. at 21. Because defendants do not specifically move to dismiss digoxin IRPs' claims based on this argument, *see* Defs.' Mem. in Support of Mot. to Dismiss DG IRP Compl., the digoxin IRPs' opposition to the motion does not address it and they do not voluntarily dismiss their claims under the Michigan or Nevada consumer protection statutes.

[156] *California*: The relevant statute permits suits by any "person," which includes entities. Cal. Bus. & Prof. Code §§ 17204,17201. *District of Columbia*: The District's consumer protection act defines a "consumer" as any "person," defined to include entities who purchases "consumer goods or services," so long as the purchase is not "for purposes of resale." D.C. Code § 28-3901(a); *see Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. App. 1989) ("If . . . the purchaser is not engaged in the regular business of purchasing . . . and reselling it, then the transaction will usually fall within the Act."). *Hawaii*: Hawaii Rev. Stat § 480-2(e) ("[a]ny person may bring an action"); *see Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 309 (Haw. 2010) ("Most of the committee reports suggest that the 'any person' language is to be construed broadly . . . ."). *Massachusetts*: Mass. Gen. Laws ch. 93A, § 9(1) ("Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder . . . may bring an action . . . ."); *see In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 191 (1st Cir. 2009) ("§ 9 affords a private remedy to the individual consumer who suffers a loss as a result of the use of an unfair or deceptive act or practice" as distinct from § 11, which "grants a cause of action to '[a]ny person engaged in the conduct of any trade or commerce,' which the Massachusetts Supreme Judicial Court ("SJC") has interpreted to mean persons 'acting in a business context'"). *Michigan*: Mich. Comp. Laws Ann. § 445.902(d) ("Person" means an individual, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, or other legal entity); *see Action Auto Glass v. Auto Glass Specialists*, 134 F. Supp. 2d 897, 901 (W.D. Mich. 2001) ("any plaintiff asserting a claim under the MCPA would have to show that the *defendant* is in the business of providing consumer goods or services," not that the *plaintiff* purchased goods for consumer use) (emphasis added); *see also John Labatt Ltd. v. Molson Breweries*, 853 F. Supp. 965, 970 (E.D. Mich. 1994) ("the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events"). *Missouri*: The Missouri Merchandising Practices Act defines a "person" to include entities. Mo. Ann. Stat. § 407.010(5); *see also State v. Polley*, 2 S.W.3d 887, 892 (Mo. Ct. App. 1999) ("The statute's broad language of 'any person who has suffered any ascertainable loss' contemplates that other parties, besides the direct purchaser or contracting party, who suffer damages resulting from the violator's prohibited conduct under the Act are included among those eligible to receive restitution."). *Montana*: Montana allows claims by any "consumer." Mont. Code Ann. § 30-14-133(1); *see In re New Motor Vehicles*, 350 F. Supp. 2d at 193 ("application of the Montana consumer protection statute is not limited to those who engage directly in consumer transactions"). *Nevada*: In Nevada, a consumer protection "action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. Ann. § 41.600; *see In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 227 (S.D.N.Y. 2012) ("while any victim of consumer fraud may bring a civil action, elderly and disabled persons may recover more for each violation"). *Rhode Island*: The Rhode Island Unfair Trade Practices and Consumer Protection Act permits claims by "[a]ny person who purchases or leases goods or services

41

ultimately be able to show that they are "consumers" who made purchases that entitle them to recovery under the relevant state laws is a question for resolution later in this litigation.[157]

The Court will, however, dismiss Group 1 EPPs' and IRPs' claims under the West Virginia Consumer Credit and Protection Act.[158]  Purchases of generic prescription drugs are the subject of this litigation and in *White v. Wyeth*, the Supreme Court of West Virginia held "that the private cause of action afforded consumers under West Virginia Code § 46A–6–106(a) does not extend to prescription drug purchases."[159]

### g.    Demand Letter Requirement

Defendants move to dismiss clobetasol, digoxin, divalproex ER, and doxycycline EPPs' Massachusetts Consumer Protection Law claims because they have not alleged compliance with pre-filing demand letter requirements.[160]  The relevant statutory provision encourages settlement by means of a "written demand for relief" to be mailed to a defendant before an action is filed.[161]

---

primarily for personal, family, or household purposes." R.I. Gen. Laws Ann. § 6-13.1-5.2(a); *see also* R.I. Gen. Laws Ann. § 6-13.1-1 ("'Person' means natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity.").  At least some of the Group 1 EPPs are alleged to have made such purchases.  *Vermont*:  As with Rhode Island, at least some of the Group 1 EPPs are alleged to have made purchases of Group 1 Drugs for use as consumers and thus they have stated a plausible claim for relief at this stage of the litigation.  *See In re Aggrenox*, 2016 WL 4204478, at *9 (explaining that the Vermont Consumer Fairness Act's "definition of 'consumer' allows businesses to sue as consumers with respect to the products they use as consumers.").

[157] *Cf. In re Liquid Aluminum Sulfate*, 2017 WL 3131977, at *26 ("While this Court is not absolutely certain that IPP will be able to prevail on their District of Columbia Consumer Protection Procedures Act, as they ultimately may be found to not be consumers, that is not the task at hand. IPP Compl[aint], read as true, sufficiently states a claim to proceed.").

[158] W.Va. Code §§ 46A-6-101-110.

[159] 705 S.E.2d 828, 838 (W. Va. 2010).

[160] Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 30-31; Defs.' Mem. in Support of Mot. to Dismiss DG EPP Compl. at 19 n.12; Defs.' Mem. in Support of Mot. to Dismiss DV EPP Compl. at 30-31; Defs.' Mem. in Support of Mot. to Dismiss CB EPP Compl. at 32-33.  Defendants make a similar argument with respect to clobetasol, digoxin, divalproex ER, and doxycycline EPPs' and clobetasol IRPs' West Virginia Consumer protection law claims.  Because the Court will dismiss these claims pursuant to *White v. Wyeth*, it need not consider this argument.

[161] *See* Mass. Gen. Law Ch. 93A, § 9.

Massachusetts statute's notice requirement – designed to encourage settlement – is procedural and not substantive in nature.[162]  The Court declines to dismiss the relevant Massachusetts consumer protection claims on the basis of this argument.

### 3.    STATE UNJUST ENRICHMENT CLAIMS

Group 1 Defendants seek to dismiss certain of Group 1 EPPs' and IRPs' unjust enrichment claims.  The doctrine of unjust enrichment "is founded on the principle that a party which receives a benefit under inequitable circumstances should not be permitted to retain the benefit."[163]  "Generally speaking, in order to state a claim for unjust enrichment, a plaintiff must allege (1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it."[164]  The specific requirements to plead unjust enrichment vary by state.

### a.    *Illinois Brick* Does Not Bar Unjust Enrichment Claims

Group 1 Defendants first argue that EPPs and IRPs cannot assert unjust enrichment claims under the laws of the 25 jurisdictions that have not repudiated *Illinois Brick's* prohibition against indirect purchaser damages actions.[165]  As a result, they contend the Court should dismiss EPPs' and IRPs' unjust enrichment claims brought under the laws of Alaska, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana,

---

[162] *See Sergeants Benevolent Ass'n Health & Welfare Fund*, 2018 WL 7197233, at *44 (declining to dismiss Massachusetts consumer protection claim on the basis of the plaintiffs' failure to allege compliance with the pre-filing notice requirement, explaining that the provision "appears to operate like a rule 68 offer of judgment, capping damages for defendants who make settlement offers in good faith").

[163] *In re Flonase*, 692 F. Supp. 2d at 541 (citations omitted).

[164] *In re Suboxone*, 64 F. Supp. 3d at 703 (citations omitted).

[165] *See* Defs.' Mem. in Support of Mot. to Dismiss PV EPP Compl. at 30; Defs.' Mem. in Support of Mot. to Dismiss PV IRP Compl. at 31.

Maryland, Massachusetts, Missouri, Montana, New Jersey, Oklahoma, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, Texas, Virginia, Washington, and Wyoming.[166] EPPs respond that, "[w]hile decisions go both ways, the better reasoned decisions permit unjust enrichment claims in non-*Illinois Brick* repealer states."[167] IRPs argue that "[i]n the absence of authority from state courts precluding the common law cause of action, it is incorrect to assume that any state prevents an unjust enrichment claim."[168]

As Group 1 EPPs and IRPs argue, the concerns that motivate *Illinois Brick* – the complexity associated with correctly apportioning recovery among direct purchasers, middlemen, and ultimate consumers,[169] are not implicated in the context of unjust enrichment claims because "the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs."[170] "No reason or logic supports a conclusion that a state's adherence to the rule of *Illinois Brick* dispossesses a person not only of a statutory legal remedy for an antitrust violation, but also dispossesses the same person of his right to pursue a common law equitable remedy."[171] Therefore, *Illinois Brick* does not require dismissal of the unjust enrichment claims at this time. Plaintiffs are "entitled to plead causes of action in the alternative.

---

[166] *See, e.g.*, Defs.' Mem. in Support of Mot. to Dismiss DX EPP Compl. at 33; Defs.' Mem. in Support of Mot. to Dismiss PV EPP Compl. at 30; Defs.' Mem. in Support of Mot. to Dismiss DX IRP Compl. at 34-35; Defs.' Mem. in Support of Mot. to Dismiss PV IRP Compl. at 31-32.

[167] PV EPP Opp. Br. at 52.

[168] PV IRP Opp. Br. at 25.

[169] 431 U.S. at 737.

[170] DG EPP Opp. Br. at 57 (*quoting Martin v. Ford Motor Co.*, 292 F.R.D. 252, 280 (E.D. Pa. 2013)).

[171] *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 46 (D.D.C. 2008); *see also King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 702 F. Supp. 2d 514, 540 (E.D. Pa. 2010) ("[U]njust enrichment claims are viable regardless of the applicable state antitrust laws."). *But see In re Packaged Seafood Prods.*, 242 F. Supp. 3d at 1088–89 ("[I]t would be inequitable to permit relief where the state has clearly made a policy determination that no such relief should lie.").

Pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure, a party 'may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.'"[172]

### b.    Confer a Direct Benefit

Group 1 Defendants also contend that because Group 1 EPPs' and IRPs' are indirect purchasers, they have not alleged that they conferred a direct benefit on any Defendant as is necessary to plead an unjust enrichment claim under the laws of Alabama, Arizona, the District of Columbia, Florida, Georgia, Idaho, Iowa, Kansas, Maine, Maryland, Michigan, Missouri, New Jersey, New York, North Carolina, North Dakota, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, and Utah.[173]

Group 1 EPPs and IRPs respond that Defendants' "direct benefit" argument fails because, in the unjust enrichment context, the term direct refers to a benefit that is not incidental, and not to a requirement that there be privity between the parties.[174]  They argue that "the chain of distribution in the pharmaceutical industry is short, direct, and well understood . . . [and p]rice increases can be directly chased throughout this distribution chain."[175]  They contend that it is enough that they have alleged "that they overpaid as a result of Defendants' unlawful actions, that Defendants benefited and were enriched from those sales, that the benefits are traceable by overpayments by Plaintiffs and the Damages class, and that it would be inequitable for

---

[172] *In re Liquid Aluminum Sulfate*, 2017 WL 3131977, at *29 (*quoting* Fed. R. Civ. P. 8(d)(2)) (further citations omitted).

[173] *See, e.g.,* Defs.' Mem. in Support of Mot. to Dismiss PV EPP Compl. at 31; Defs.' Mem. in Support of Mot. to Dismiss PV IRP Compl. at 32.

[174] *See, e.g.*, PV EPP Opp. Mem. at 54; PV IRP Opp. Mem. at 25.

[175] DG EPP Opp. Mem. at 58 (*quoting Propranolol*, 249 F. Supp. 3d at 725) (citations omitted).

Defendants to retain those revenues."[176]

Group 1 EPPs and IRPs have pleaded that they conferred a non-monetary benefit to Defendants – here the act of purchasing the Group 1 drugs or providing funds for the purchase of the Group 1 drugs through reimbursement – in that their actions allowed Defendants to obtain the benefit of increased revenue from the sale of the Group 1 drugs. The EPPs and IRPs have plausibly alleged that their alleged losses from purchasing Group 1 drugs at inflated prices are connected to benefits incurred by Defendants who allegedly conspired to raise the prices of those drugs. "[T]he mere fact that there has been no direct contact between a defendant and the plaintiff does not preclude a finding that the defendant received a direct benefit from that plaintiff."[177] At this stage of the litigation, the connection between the EPPs and IRPs and the Defendants is not so attenuated as to render implausible Group 1 EPPs' or IRPs' claims for unjust enrichment. This conclusion arguably comports with the equitable purpose of an unjust enrichment claim.[178]

### c.     No Adequate Legal Remedy

Group 1 Defendants also argue that EPPs' and IRPs' Arizona, Minnesota, Montana, New Hampshire, New York, South Dakota, Tennessee, and Utah unjust enrichment claims must be dismissed because they have not pled that they lack an adequate legal remedy.[179] Group 1 EPPs' and IRPs' complaints allege that they have no adequate remedy at law.[180] At this stage of the

---

[176] DG EPP Opp. Mem. at 59 (*citing* DG EPP Compl. ¶ 290) (internal quotation omitted).

[177] *Williams v. Wells Fargo Bank*, N.A., No. 11-21233, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011).

[178] *See id.* ("It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant.").

[179] *See, e.g.,* Defs.' Mem. in Support of Mot. to Dismiss PV EPP Compl. at 33.

[180] *See* PV EPP Compl. ¶ 357.

litigation, considering:

> Rule 8(d)(2)'s permissiveness of alternative pleading, given the [allegations of no adequate remedy at law in the Complaints], and allowing for all inferences to be drawn in favor of Plaintiffs, the Court cannot rule as a matter of law that Plaintiffs have failed to plausibly suggest that there is an absence of an adequate remedy at law.[181]

The Court will not dismiss these unjust enrichment claims based on Defendant's argument regarding an adequate legal remedy.

## C. STATUTE OF LIMITATIONS

To the extent that Defendants seek to dismiss certain of EPPs' and IRPs' claims as being barred by the statute of limitations, their motions are denied. The question of whether any of Plaintiffs' claims are barred by the asserted statute of limitations defenses is more appropriate for resolution at a later stage of the proceedings following more particularized discovery.[182]

## III. CONCLUSION

Consistent with the analysis set forth above, the Court will grant Defendants' motions in part and deny them in part. The Court will dismiss the following claims with prejudice: (1) Group 1 EPPs' and IRPs' claims under the Illinois Antitrust Act; (2) divalproex ER and doxycycline EPPs' and IRPs' claims under the Rhode Island antitrust law to the extent they seek to recover damages for alleged overcharges incurred prior to July 15, 2013; (3) Group 1 EPPs' and IRPs' Georgia Uniform Deceptive Trade Practices Act claims to the extent that they seek monetary relief for such claims; and (4) Group 1 EPPs' and IRPs' claims under the West

---

[181] *In re Processed Egg Prod. Antitrust Litig.*, 851 F. Supp. 2d 867, 918 (E.D. Pa. 2012).

[182] *See Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017) ("If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).") (internal quotation marks, alterations and citation omitted); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss.").

Virginia Consumer Credit and Protection Act.  The Court will also dismiss with prejudice Group 1 EPPs' and IRPs' South Carolina consumer protection claims and Group 1 EPPs' Montana consumer protection claims to the extent that they seek to pursue these claims on behalf of a class.  They may proceed with the South Carolina and Montana consumer protection claims on an individual basis if they have Article III standing to assert such claims.

In addition, the Court will dismiss Group 1 EPPs' Alabama antitrust claims, Group 1 EPPs' New Jersey Consumer Protection Act claims, and Group 1 IRPs' claims under the Michigan and Nevada consumer protection statutes because they have indicated their intent to withdraw or voluntarily dismiss these claims in response to Defendants' motions.

The Court otherwise concludes that Group 1 EPPs' and IRPs' state law claims are sufficient to withstand dismissal.

An appropriate Order follows.